[Crim. No. 344.   Fourth Appellate District.—March 29, 1937.]

THE   PEOPLE,   Respondent,   v.   GEORGE   WAHNISH, Appellant.

Thomas W. Cochran for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was accused of a violation of section 548 of the Penal Code. He was found guilty by a jury and has appealed from the judgment and from an order denying his motion for a new trial.

It appears from the evidence that the appellant was in the trucking business; that one Le Roy and one Le Baron were employed by him as truck drivers; that through an agent or broker named Hodge he obtained fire insurance on one of his trucks about February, 1936; that thereafter he rebuilt or added certain equipment to this truck; that on June 4, 1936, he applied to Hodge for additional insurance covering the added equipment; that about 2 o'clock P. M. on June 15, 1936, he received an order to move certain freight from Los Angeles to Phoenix, Arizona; and that the same afternoon he called on Hodge and asked if the endorsement for the added insurance had arrived. On being told that it had not he asked Hodge if he could get the endorsement and have it in his hands that afternoon. After calling the agent of the insurance company Hodge informed him that the endorsement could not be delivered that afternoon. He then asked Hodge if he could not give him something to show that the additional equipment on the truck was covered and, as Hodge testified: "I wrote a statement out and gave it to Mr. Wahnish which he asked for."

The truck was loaded between 5 and 6 o'clock on that day, the load consisting of about five tons of sacked wheat, some packages of drugs and paper, and three large crates of furniture, which were placed on top of the load. The shipper stated that he was anxious to have this load go through on time and asked the appellant to accompany the truck in his own automobile, which he agreed to do. After being loaded the truck was taken to a service station where, upon the order of the appellant, eight new tires were taken from the truck and replaced with older tires from another truck owned by the appellant. Thereafter, with Le Baron as driver, the truck was started to Phoenix. Before starting, the appellant instructed Le Baron to stop at Beaumont and wait for him. Later that evening the appellant and Le Roy started in the appellant's car and caught up with the truck at Beaumont,

where Le Baron was waiting. At the direction of the appellant Le Baron got into the appellant's car, and Le Roy and the appellant got into the truck. With Le Roy driving, the truck proceeded and Le Baron followed in the other car. About twenty-five miles east of Indio, at about 4 o'clock in the morning, a fire occurred resulting in practically a complete loss of the truck and its load. The appellant returned to Los Angeles and the next morning began an attempt to collect the insurance on the truck and on the added equipment.

Le Roy testified that after the truck was loaded the appellant told him, in the presence of Le Baron, that he wanted some of the tires taken off the truck as the truck would never reach Phoenix; that the appellant assisted in changing the tires; that the tires taken off the loaded truck were quite new, while those which were put on were about five months old; that after the tire change was made the appellant told him "We might as well take this furniture off because there is no use burning it"; that he and the appellant took this furniture, which was crated and consisted of a davenport, two chairs and a footstool, from the loaded truck and took it to the home of one Dell Guidice; that they asked permission to leave it there and did leave it there; that they then drove to Le Roy's house, where Le Roy left a small quantity of drugs taken from the truck; that they then went to a service station where the appellant had a five-gallon can filled with gasoline; that after getting something to eat he and appellant got into the appellant's car and he drove to Beaumont; that they found the truck there and the appellant instructed Le Baron to take the can of gasoline from appellant's automobile and place it in the cab of the truck, which Le Baron did; that he and the appellant got into the truck, which he drove, and Le Baron followed in the automobile; that when they arrived at Whitewater grade the appellant instructed him to take the can of gasoline and get up on top of the load and pour the gasoline over the load; that he told the appellant there was too much traffic there and the appellant replied: "We will go on then"; that they drove on as before to Indio, where they had some coffee, after which he and the appellant went on with the truck; that when they reached a point about three miles beyond Mecca, toward Box canyon grade, the appellant told him to get on top of the load and pour the gasoline over the load; that he got up, the appellant handed

him the five-gallon can of gasoline and he poured the entire contents of the can over the load; that under the instruction of the appellant he spread it over the entire load; that he got off the truck and the appellant struck a match and threw it on the load, which immediately caught fire; that the appellant then told him to drive the truck up the road "a ways"; that they got into the cab and he drove about a mile or a mile and a half when the appellant instructed him to pull the truck to the left side of the road and get out; that the appellant then took the fire extinguisher and emptied it on the ground, making no effort to play it on the flames; that a few minutes later Le Baron drove up in the appellant's automobile; that they watched the fire burn for about a half hour and then returned to Indio; that the appellant there asked a garage man to go out and pick up the truck and they returned to Los Angeles; and that the appellant instructed him and Le Baron that if anyone asked them how the fire started they should merely say they did not know.

Le Baron testified that before he left Los Angeles he heard the appellant say the truck would never reach Phoenix, and that he knew that he meant the truck was going to be burned; that he drove the truck to Beaumont and waited according to instructions; that the appellant there told him to follow in the automobile and told him they were going to stop at Whitewater and were going to burn the truck there; that he followed in the car; that at Whitewater the appellant told Le Roy to get up on top of the truck and pour the gasoline on the load; that Le Roy said he did not want to do this as there was too much traffic; that the appellant said they would go on to Indio and directed him to follow in the automobile, which he did; that at Indio the appellant told him he could sleep for a while; that he did so and followed the truck in about an hour; and that about twenty-five miles from Indio near the entrance to Box canyon he found the truck burning.

Le Roy's testimony that three crates of furniture, which were a part of this load, were left at a certain house was corroborated by the testimony of three occupants of this house, who testified that about 9:30 o'clock on the evening of June 15th Le Roy and the appellant came to this house, that Le Roy asked permission to leave the furniture there for a few days, and that three crates of furniture, including a davenport and some chairs, were left there.

■   The appellant argues that the evidence is insufficient to sustain the verdict for the reason that there was not sufficient corroboration of the testimony of the accomplices within the meaning of section 1111 of the Penal Code, and that the court erred in refusing to instruct the jury that the witness Le Baron was an accomplice, as a matter of law. These two points are argued together. The court instructed the jury that Le Roy was an accomplice, but refused to give a similar instruction with respect to Le Baron. It is conceded ''that the court fully and fairly charged the jury as to the definition of an accomplice and the necessity and degree of corroboration to sustain a conviction on the testimony of such accomplice''. It is argued, however, that there was no corroborating evidence tending to establish the commission of a crime or tending to connect the appellant with such crime, and that it therefore appears that the jury must have come to the conclusion that Le Baron was not an accomplice and then accepted his evidence as corroborating the testimony of the accomplice Le Roy.

In support of his contention that Le Baron was an accomplice and that it was prejudicially erroneous to refuse to instruct the jury to this effect, the appellant cites *People* v. *Southwell,* 28 Cal. App. 430 [152 Pac. 939]; *People* v. *Allison,* 200 Cal. 404 [253 Pac. 318]; *People* v. *Swoape,* 75 Cal. App. 404 [242 Pac. 1067]; *People* v. *Schumann-Heink,* 98 Cal. App. 225 [276 Pac. 625]; and *People* v. *Truax,* 30 Cal. App. 471 [158 Pac. 510]. While these cases support the proposition that the question of whether a witness is an accomplice is one for the court where the facts themselves are not in dispute and, further, that the failure to give such an instruction may be prejudicial under some circumstances, we think they are not controlling here. In *People* v. *Ferlin,* 203 Cal. 587 [265 Pac. 230], the court said:

''Complaint is made by the defendant that the lower court erred in refusing to charge the jury, as matter of law, that the witness Hill was an accomplice. It is urged that this question, in view of the evidence in the case, was not a proper one to be submitted to the jury for determination. We are of the opinion that the defendant's contention is meritorious, for the evidence in the case unquestionably points to Hill as an accomplice. Moreover, the conduct of the prosecuting officer throughout the trial strongly indicates that Hill was

so regarded. The question as to whether or not the witness Hill was an accomplice, under the evidence, was not seriously disputed upon the trial of the cause. It was the duty of the trial court, therefore, to instruct the jury, as matter of law, that Hill was an accomplice of the defendant. (*People* v. *Coffey*, 161 Cal. 433, 436 [39 L. R. A. (N. S.) 704, 119 Pac. 901]; *People* v. *Howell*, 69 Cal. App. 239, 242 [230 Pac. 991].) However, this error cannot be said to have prejudicially affected the defendant. In *People* v. *McDermott*, 75 Cal. App. 718 [243 Pac. 485], it is declared that 'the jury should have been instructed that Sova must be regarded as an accomplice. That question should not have been left to it to determine. However, it must be presumed that the jurors observed and applied the instructions given them. In other instructions the definition of an accomplice was correctly stated, as also was the rule that the defendant may not be convicted on the uncorroborated testimony of an accomplice, and that the corroborating evidence is not sufficient if it merely shows the commission of the crime and the circumstances thereof; and, further, that such corroborating evidence must tend to connect the defendant with the commission of the crime. Hence, it is inconceivable that the erroneous instruction given in any way prejudiced any right of the appellant.'

"Practically an identical situation is presented in the instant case, for the court below in several instructions correctly stated the definition of an accomplice and likewise informed the jury that the testimony of an accomplice must be corroborated and that the corroborating evidence must not only tend to show the commission of the offenses charged in the information, but must also tend to connect the defendant therewith."

In the case before us, the court correctly defined an accomplice and fully and completely informed the jury that the testimony of such an accomplice must be corroborated and that the corroborating evidence must not only tend to show the commission of the offense but also tend to connect the defendant therewith. It must be presumed that the jurors observed and applied the instructions thus given them. While we think the instruction complained of should have been given, we are unable to hold that the failure to give it was prejudicial error.

In *People* v. *Yeager,* 194 Cal. 452 [229 Pac. 40], the rules with respect to corroborative evidence are thus set forth:

"It has been held that to corroborate an accomplice the evidence need not establish the actual commission of the offense, nor extend to every fact and detail covered by the statements of the accomplice, or to all the elements of the offense, nor prove that the accomplice has told the truth. The corroborative evidence must tend in some slight degree, at least, to implicate the defendant. While it need not be strong, more is required by way of corroboration than mere suspicion. It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight. It is not necessary to corroborate the accomplice by direct evidence. If the connection of the accused with the alleged crime may be inferred from the corroborating evidence in the case it is sufficient."

Considering the witness Le Baron as an accomplice, his testimony and that of Le Roy are amply corroborated by other evidence in the record. The testimony of the appellant with that of the witness Hodge thoroughly establishes that the appellant attempted to get additional insurance in the amount of $850 on equipment which had been added to the truck at a cost of $650; that he displayed great anxiety, just before the truck started on this trip, to get into his hands an endorsement to the policy showing that such additional insurance was effective; that when he was unable to get this he asked for a statement from Hodge showing that he was covered, and received some sort of a statement; and that both he and Hodge believed that he was covered on the additional equipment. The appellant admitted that he was present when new tires were removed from the truck and replaced with older tires immediately before the trip was begun. There is ample evidence that he participated in removing three crates of furniture from the truck and concealing the same. The morning after the fire he told the insurance agent that all of the tires on the truck were new and offered to show the bills for the same. Previous to the trial he told the shipper that during this trip he stopped at Indio while the truck went on, and when he caught up with it he found it on fire. At the trial he testified that he left Indio on the truck, with Le Roy driving, that he fell asleep, and that he awakened

to find the whole load blazing. Two interviews with him shortly after the fire were taken down in shorthand and were admitted in evidence. These contain a number of untrue and evasive statements and conflict materially with his testimony on the witness stand.

Not only was the other evidence sufficient to meet the requirements of section 1111 of the Penal Code, as corroborating the testimony of the two accomplices, but it would also appear to have been sufficient in itself, eliminating the testimony of both accomplices, to have supported a conviction.

Under such circumstances it cannot be presumed that the jury failed to follow the instructions given it by the court, it cannot be assumed that the verdict might have been different had the requested instruction been given, and it cannot be held that the failure to give the same was sufficiently prejudicial to justify a reversal.

The judgment and order are affirmed.

Marks, J., and Jennings, J., concurred.