[Crim. No. 5356.   In Bank.   Jan. 9, 1953.]

THE PEOPLE, Respondent, v. LOVELL BARCLAY, Appellant.

George C. Carmody and Richard D. Sanders for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Charles E. McClung, Deputy Attorney General, Francis W. Collins, District Attorney (Contra Costa) and David J. Levy, Deputy District Attorney, for Respondent.

TRAYNOR, J.—Defendant Lovell Barclay was charged by indictment with the murder and robbery of Alson G. Smith. He pleaded not guilty and admitted two prior felony convictions of robbery and one of manslaughter. A jury returned verdicts of guilty of murder in the first degree without recommendation and of robbery in the first degree. Defendant's motion for a new trial was denied, and he was sentenced to death on the murder conviction and to prison on the robbery conviction. The appeal to this court is automatic. (Pen. Code, § 1239b.)

Defendant operated a restaurant concession at the Hilltop Club in Crockett, owned by Smith. On the evening of March 6, 1952, Daniel Ortiz, James Davis, and William Hatfield, three acquaintances of defendant, drove to Crockett in Davis' car. They found defendant repairing his car and after some conversation the four men went to defendant's room in Crockett. The conversation turned to the subject of robbery, and Hatfield and defendant discussed the possibility of robbing a place about 100 miles away. Defendant said that his car was in poor mechanical condition, and the two men asked Davis if they could use his car. Davis refused. After some discussion, defendant suggested that Davis drive him to the Hilltop Club so that he could borrow the car of a bartender who worked there. Davis agreed and the four men arrived at the Hilltop Club at about 3 o'clock in the morning.

Davis and Ortiz waited in the car. Hatfield and defendant forced open a window and entered the club. Knowing that Smith kept most of his money in his room, the two men went upstairs. Hatfield entered the room first and found Smith asleep. He beat Smith until he was unconscious. The two men then ransacked the room and found Smith's wallet and several bags of silver. While their attention was distracted Smith recovered consciousness and sat up in bed. Hatfield, using defendant's nickname, called out: "Frisco, what should I do?" Defendant said: "Man, you shouldn't have said my name . . . I'll take care of him." Defendant threw a blanket over Smith's head. Hatfield turned his

back as defendant beat Smith about the head for approximately a minute. The two men took the money and returned to the car where Ortiz and Davis were still waiting.

Ortiz and Davis asked about the bartender's car, but defendant and Hatfield laughed and told Davis to drive back to defendant's room. After they arrived, Davis and Ortiz saw Hatfield wash blood off his hands and watched the two men divide the money. Realizing that a crime had been committed while Hatfield and defendant were in the club, Ortiz and Davis complained that they had become involved. They were given about $10 apiece and told to keep quiet. The four men separated and went home.

Smith never regained consciousness and died the day after the robbery. The injuries received from the beating were the direct cause of his death. When Davis and Ortiz read in a newspaper that Smith had died, they informed the police of the crime, and Hatfield and defendant were apprehended.

Hatfield and defendant were tried jointly. Ortiz and Davis testified as witnesses for the prosecution. Midway through the trial Hatfield withdrew his plea of not guilty and pleaded guilty. Subsequently he testified as a witness for the prosecution. An expert witness testified that he found fibres on defendant's clothes that matched fibres from the bedding on Smith's bed, and that he found dust on defendant's clothes that matched dust on the roof of the Hilltop Club taken from the point where defendant and Hatfield made their entry. Defendant took the stand in his own behalf and testified that on the night of the murder he completed his work at the club at about 1:30 and then went home to bed. He contended that Hatfield, Ortiz, and Davis had falsely accused him of the crime in order to avoid responsibility for themselves. The jury rejected his defense and found him guilty.

■ Since the evidence in the present case shows that defendant killed Smith in the commission of a robbery, it is clearly sufficient to support the conviction of murder in the first degree. (Pen. Code, § 189; *People* v. *Coefield,* 37 Cal.2d 865, 868-869 [236 P.2d 570].)

Defendant contends that the court erred in not instructing the jury that Davis, Ortiz, and Hatfield were accomplices as a matter of law. ■ An accomplice is "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Pen. Code, § 1111.) If the

undisputed evidence establishes that a witness is an accomplice, the jury should be so instructed. (*People* v. *Wallin,* 32 Cal.2d 803, 809 [197 P.2d 734]; *People* v. *Ferlin,* 203 Cal. 587, 601 [265 P. 230]; *People* v. *Coffey,* 161 Cal. 433, 436 [119 P. 901, 39 L.R.A.N.S. 704].) ▇ Insofar as Davis and Ortiz are concerned, however, defendant's contention cannot be sustained. Davis and Ortiz testified that they knew nothing about the possibility of a robbery until the four men gathered in defendant's room; that they refused to take part in the projected robbery 100 miles from Crockett; that they drove to the Hilltop Club with Hatfield and defendant in the belief that the only purpose of the trip was to get the bartender's car; that they were afraid that if they refused to go to the Hilltop Club, Davis' car would be taken by force; and that they did not know until after they returned to defendant's room that any robbery of the Hilltop Club had been contemplated. From the testimony of Davis and Ortiz the jury could reasonably conclude that the robbery of the Hilltop Club was an act independent of and foreign to the original criminal design to rob a place 100 miles away, and that Davis and Ortiz were thus not guilty of the murder and robbery of Smith. (*People* v. *Harper,* 25 Cal.2d 862, 870-873 [156 P.2d 249]; *People* v. *Kauffman,* 152 Cal. 331, 335 [92 P. 861]; see, also, Wharton's Criminal Law [12th ed.], § 258; 15 C.J.S., Conspiracy, § 74.) Accordingly, the question whether or not Davis and Ortiz were accomplices to the crimes for which defendant was on trial was properly left to the determination of the jury. (See cases collected in 19 A.L.R.2d 1352.) ▇ If it is assumed that, as contended by defendant, Davis and Ortiz were guilty as a matter of law of the crime of concealing a felony (Pen. Code, § 32), they still would not be "liable to prosecution for the identical offense charged against the defendant on trial" as required by section 1111. (*People* v. *Collum,* 122 Cal. 186, 187 [54 P. 589]; see *People* v. *Wallin, supra,* 32 Cal.2d 803, 807.)

▇ The People concede that Hatfield was an accomplice as a matter of law and that it was error not to so instruct the jury. The court, however, clearly and correctly instructed the jury on the definition of an accomplice. The jury knew that Hatfield had been indicted with defendant; they had heard his testimony that he committed the crime; they knew that he had withdrawn his plea of not guilty and entered a plea of guilty. The district attorney stated in his argument to the jury: "With Mr. Hatfield we feel that he was an accomplice, there is no doubt about it. As to Davis and Ortiz, you

are to decide whether or not they are accomplices." Under these circumstances, it is improbable that the jury considered that Hatfield was not an accomplice and that a different verdict would have been reached had an instruction been given that he was an accomplice. (See *People* v. *Ferlin, supra,* 203 Cal. 587, 601-602; *People* v. *Wahnish,* 20 Cal.App.2d 58, 63 [66 P.2d 677].)

The only evidence before the grand jury to connect defendant with the crime was the testimony of Ortiz and Davis. Defendant contends that the trial court erred in denying his motion to set aside the indictment, on the ground that it was not based upon evidence that would warrant a conviction by a trial jury. (Pen. Code, § 921; *cf. Lorenson* v. *Superior Court,* 35 Cal.2d 49 [216 P.2d 859]; *People* v. *McRae,* 31 Cal.2d 184 [187 P.2d 741].) It is unnecessary to pass upon this contention since, as we have seen, whether or not Ortiz and Davis were accomplices of defendant was a question of fact to be determined by the jury at the trial.

At the request of the People, the jury was instructed that: "It is the law that the testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with *care and caution* and in the light of all the evidence in the case." Defendant criticizes the italicized part of the instruction, on the ground that the jury should have been instructed only in the language of section 2061(4) of the Code of Civil Procedure, that "the testimony of an accomplice ought to be viewed with distrust," and that the additional words "care and caution" prejudicially weakened the instruction. ▆ It is error to instruct the jury that an accomplice's testimony should be viewed with "caution" without also instructing the jury in the language of the statute. (*People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873]; see, also, *People* v. *Dail,* 22 Cal.2d 642, 653 [140 P.2d 828].) ▆ The instruction given in the present case, however, read as a whole, is a correct statement of the law. (*People* v. *Hess,* 107 Cal.App.2d 407, 430 [237 P.2d 568]; *People* v. *Chapman,* 93 Cal.App.2d 365, 381 [209 P.2d 121].)

▆ The jury was instructed that: "If either the crime of murder or robbery, the commission of which is alleged in the indictment, was committed by any of the witnesses in this case, then as a matter of law such witness was an accomplice, assuming that you find that the defendant Bar-

clay also participated in either of said crimes." Defendant contends that the instruction erroneously informed the jury that "only one of the witnesses, for example, Hatfield, could be an accomplice, and not all of them." The instruction, however, expressly applied to "any" of the witnesses. Defendant also contends that the word "committed" in the instruction "eliminated from the definition of an accomplice the meaning that one who 'participates,' that is to say aids or assists, or takes part in the crime, is an accomplice, and limited the meaning of accomplice to one who actually did or committed the criminal act." In another instruction, the jury was informed that: "All persons concerned in the commission of a crime who either directly or actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof." When the two instructions are read together, no error appears.

The jury was instructed that: "In determining whether or not the testimony of an accomplice has been corroborated as required by law, you must, for the purpose only of your consideration of that question, assume to be removed from the case the testimony of the accomplice, and then examine all other evidence with a view to determining if there be any inculpatory evidence, that is, evidence tending to connect the defendant with the commission of the offense. If such other evidence does do that, then the testimony of the accomplice is corroborated; if it does not, then there is no corroboration, although the accomplice may be corroborated in regard to any number of facts sworn to by him." Defendant contends that the instruction erroneously permitted the jury to find corroboration of the testimony of one accomplice in the testimony of other accomplices, on the ground that it told the jury that the test of corroboration was whether, aside from the testimony of "the" accomplice, "all other evidence" tended to connect the defendant with the commission of the offense. Defendant contends that "all other evidence" would include testimony of other accomplices so that the jury, even though it found Davis and Ortiz to be accomplices, might nevertheless have considered their testimony as corroborative of the testimony of Hatfield. In the instruction following that quoted above, however, the jury was told that: "The corroboration of an accomplice required

by law may not be supplied by the testimony of one or more other accomplices, but must come from other evidence or circumstances, or from the testimony of one or more witnesses who were not accomplices." The two instructions, read together, correctly state the law.

Early in the trial a confession by Hatfield was admitted in evidence. The jury was instructed that it should not consider the confession as evidence against defendant. (See *People* v. *Wade,* 71 Cal.App.2d 646, 652-653 [163 P.2d 59].) Subsequently, Hatfield withdrew his plea of not guilty. The court denied defendant's motion for a mistrial and instructed the jury that the testimony regarding Hatfield's confession was struck from the record and must be disregarded. Hatfield later testified regarding all the matters set forth in his confession. Defendant now contends that his motion for a mistrial should have been granted, on the ground that the confession of Hatfield was admissible at the trial of defendant only if Hatfield and defendant remained jointly on trial until the cause was submitted to the jury. Since all matters set forth in the confession were subsequently in evidence when Hatfield testified as a witness for the People, the error, if any, was not prejudicial to defendant. (*People* v. *Simmons*, 28 Cal.2d 699, 721 [172 P.2d 18] ; *People* v. *Higbee*, 78 Cal.App. 455, 459 [248 P. 927].)

Police officers took the pillow and quilt from Smith's bed and sent them to a laboratory for analysis. At the time of the initial investigation of Smith's room, the pillow was covered with a slip, but the slip was missing when the pillow arrived at the laboratory. The absence of the slip was never explained. Defendant contends that it was error to allow the expert witness to testify regarding the similarity of fibres swept from the pillow with fibres swept from defendant's clothes, on the ground that when examined by the expert the pillow was not in the same condition as at the time of the murder. Defendant, however, does not show how the absence of the pillow slip could have prejudiced him in any way.

Defendant next contends that his conviction of robbery in the first degree is unsupported by competent evidence. Robbery is of the first degree when it "is perpetrated by torture or by a person being armed with a dangerous or deadly weapon." (Pen. Code, § 211a.) There is no evidence of torture in the present case, but Hatfield testified that he was armed wth a .38 revolver at the time of the robbery. Hat-

field's testimony, if competent, supplied sufficient evidence to sustain defendant's conviction of first degree robbery since defendant, although personally unarmed, aided and abetted the commission of the crime. (Pen. Code, § 31; *People* v. *Perkins,* 37. Cal.2d 62, 64 [230 P.2d 353].)

Defendant contends, however, that the fact that there is no evidence to show that a deadly weapon was used in the robbery other than the testimony of Hatfield, admittedly an accomplice, requires the judgment to be modified by reducing the degree of the crime to robbery in the second degree. (Pen. Code, § 1181; see *People* v. *Mendes,* 35 Cal.2d 537, 545-546 [219 P.2d 1].) This contention cannot be sustained. Section 1111 of the Penal Code requires only that the corroborative evidence tend "to connect a defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth. It is not necessary that the accomplice be corroborated as to every fact to which he testifies." (*People* v. *Trujillo,* 32 Cal.2d 105, 111 [194 P.2d 681] ; *People* v. *Henderson,* 34 Cal.2d 340, 342-343 [209 P.2d 785].) Proof of the elements of the crime, as contrasted with proof of the connection of defendant with the commission thereof, may rest upon the uncorroborated testimony of an accomplice. (*People* v. *Harper,* 25 Cal.2d 862, 877 [156 P.2d 249] ; *People* v. *Negra,* 208 Cal. 64, 69 [280 P. 354] ; *People* v. *Griffin,* 98 Cal.App.2d 1, 25 [219 P.2d 519] ; *People* v. *Briley,* 9 Cal.App.2d 84, 86 [48 P.2d 734] ; *People* v. *Knowles,* 75 Cal.App. 229, 230 [242 P. 508] ; see 21 Cal.L.Rev. 247.) The testimony of Ortiz, Davis, and the expert witness constituted. sufficient corroborative evidence to connect defendant with the commission of the crime of robbery. It was unnecessary also to corroborate the testimony of Hatfield that a deadly weapon was used therein.

The jury was instructed that it was in their discretion whether the death penalty should be inflicted.* Six hours

---

* "The law of this state provides that every person guilty of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury that finds him guilty. If you should find the defendant guilty of murder in the first degree, it will be your duty to determine which of the two penalties shall be inflicted, the death penalty or confinement in the state prison for life. If you should fix the penalty as confinement in the state prison for life, you will so indicate in your verdict, using a form that will be handed to you when you retire to deliberate, but if you should fix the penalty as death, you will not specify the death penalty in your verdict, and you will say nothing about punishment in the verdict."

after the jury retired, it returned and the foreman asked: "The jury would like to review that portion of your instructions concerning what factors, if any, in law may be properly considered in determining whether the recommendation for life imprisonment may be included in returning the verdict." The court read again the instruction previously given. The foreman then asked: "In the recommendation 'as a punishment therefor we find that he be imprisoned in the state prison during the term of his life'—does it mean exactly that, or is that sentence subject to termination by parole?" The court replied that he didn't believe it was "within the province of the jury to consider" that question. The court then discussed the question with counsel out of the presence of the jury. Counsel for defendant stated: "At this time the defendant asks the court to instruct the jury that because of the fact that a conviction of this offense would make him a habitual criminal that he would not be subject to parole under any circumstances." The court refused to give the requested instruction and the jury returned to its deliberations. One hour later the jury returned a verdict of murder in the first degree without recommendation. Defendant contends that the ruling of the court was prejudicially erroneous, on the ground that the jury may have fixed the punishment at death because of a mistaken belief that otherwise defendant might be released from prison on parole within a few years of his conviction.

When a defendant is convicted of murder in the first degree, the jury determines his punishment as well as his guilt. (Pen. Code, § 190; *People* v. *Sainz*, 162 Cal. 242, 246-247 [121 P. 922]; *cf.* Pen. Code, § 209 [kidnapping with bodily harm]; Pen. Code, § 264 [rape of female under age 18].) Since the issues of punishment and guilt are determined at the same time, there is danger that evidence or instructions offered on the former issue may influence the verdict on the latter issue. Accordingly, to avoid prejudice to either the People or the accused by injection of collateral issues into the case, evidence of the good or bad habits and background of the accused is generally held inadmissible (*People* v. *Valenzuela*, 7 Cal.2d 650, 653 [62 P.2d 142]; *People* v. *Witt*, 170 Cal. 104, 110-111 [148 P. 928]; see, also, *People* v. *Larrios*, 220 Cal. 236, 241-242 [30 P.2d 404] [court in discretion may permit defendant to show "something of his background"]), and the consideration of the jury is limited to the facts and circumstances attending the commission of the of-

fense itself. (*People* v. *Gosden*, 6 Cal.2d 14, 30-31 [56 P.2d 211]; *People* v. *Hall*, 199 Cal. 451, 455 [249 P. 859]; *People* v. *Perry*, 195 Cal. 623, 639 [234 P. 890]; *People* v. *Pantages*, 212 Cal. 237, 275 [297 P. 890]; see 11 So.Cal.L.Rev. 351.)

For similar reasons of policy the jury is not allowed to weigh the possibility of parole or pardon in determining the guilt of the defendant, and it is therefore error to give an instruction that allows the jury to take into consideration the consequences of a recommendation of life imprisonment in arriving at that determination. (See *People* v. *Letourneau*, 34 Cal.2d 478, 494 [211 P.2d 865].) To aid the jury in fixing the punishment of the defendant, however, the court may instruct the jury as to the consequences of the different penalties that may be imposed so that an intelligent decision may be made. (*People* v. *Chessman*, 38 Cal.2d 166, 189-190 [238 P.2d 1001]; *People* v. *Osborn*, 37 Cal.2d 380, 384-385 [231 P.2d 850]; *People* v. *Caetano*, 29 Cal.2d 616, 619 [177 P.2d 1]; *People* v. *La Verne*, 212 Cal. 29, 31 [297 P. 561]; *People* v. *Hall*, 199 Cal. 451, 459 [249 P. 859]; *People* v. *Hong Ah Duck*, 61 Cal. 387, 393.) In the Osborn case, the court informed the jury that a recommendation of life imprisonment without possibility of parole would not be binding, thus impliedly answering in the affirmative the question of the jury whether a person sentenced to life imprisonment might be paroled. We stated: "It is understandable that jurors, who are charged with the duty of fixing the penalty in the event that they find a defendant guilty of first degree murder, should be interested in knowing the nature and effect of the penalties which they may impose; and neither reason nor authority indicates that the trial court should be prohibited from enlightening the jurors when questions are asked upon that subject." (37 Cal.2d at 385.) Recently, in *People* v. *Chessman, supra,* it was held that there was no error in informing a jury that when a person is sentenced to life imprisonment without possibility of parole there nevertheless remains the chance that the defendant will be freed by pardon, commutation, or action of the Legislature. The recent decisions of this court thus establish that a jury may consider the consequences of a recommendation of life imprisonment in determining the punishment of the defendant, although it may not consider the possible penalties in determining the guilt of the defendant.

The question remains whether error was committed in the present case. The instruction suggested by defendant

would have informed the jury that "he would not be subject to parole under any circumstances." The instruction was materially incorrect. Since defendant had two* prior convictions, he would have been eligible for parole in nine years. (Pen. Code, § 3049.5.) All instructions actually given by the court on the subject of punishment were correct statements of the law under the decisions of this court; defendant cannot show that any correct instruction offered by him was refused. At least under the circumstances of the present case, we do not think that the trial court was required to offer an additional instruction of its own motion. (*Cf. People* v. *Cook,* 39 Cal. 2d 496, 500 [247 P.2d 567].)

The judgment and the order denying the motion for a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied February 5, 1953.

---

*Since manslaughter is not one of the crimes enumerated in section 644 of the Penal Code, defendant's prior conviction of that crime did not affect his status as a habitual criminal.