[Crim. No. 3062.    First Dist., Div. One.    June 6, 1955.]

THE PEOPLE, Respondent, v. BERNARD FARRELL,
Appellant.

Sol A. Abrams and George E. Hammer for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of a violation of section 11500 of the Health & Safety Code, possession of heroin, defendant has appealed from the judgment and from the order denying a new trial. He claims (1) lack of corroboration of the testimony of an accomplice and (2) the allowance of improper questions upon the cross-examination of the defendant.

(1) *Was there insufficient corroboration of the testimony of Kay Lucia, an accomplice?*

Kay Lucia testified that on December 10, 1953, about noon, she saw defendant in a bar near Leavenworth and Eddy Streets, San Francisco; that he said he didn't have a room to use, was locked out of his room, and asked if he could use her room to take a "fix," which she explained as meaning an injection of a narcotic. She told him he could do so. The two of them then left in his car; stopped at Van Ness and Eddy where he got out of the car. He returned to the car in two or three minutes, and drove to an alley near de-

fendant's hotel and parked the car. He handed her a paper of heroin which was intended for both of them.* He then left the car to get his "outfit" (needle and syringe) for taking a "fix." He told her that his "outfit" was outside his room. She waited some 20 to 30 minutes for his return when she saw a police car driving toward her. She got out of the car and as an officer walked toward her, she flipped the paper of heroin on the ground.

One of the arresting officers testified that he and another police officer went to defendant's hotel on Larkin Street near Eddy and waited about two hours for him. They searched him and his baggage, but found nothing. They asked him to take them to his car so that they could search it; they told him that if they found no evidence of crime in his car, they would let him go. Defendant told them that he had parked his car at Eddy and Leavenworth, but when the three of them reached that location, the car was not there. Defendant pointed to an opening at the curb and said he had parked his car there, and then stated that possibly it had been stolen. The officers did not believe it had been stolen. Defendant then said that it might be in the neighborhood. After driving around the area for 20 minutes, they saw a car which answered the description of defendant's car parked on Willow Street. One of the officers got out of the police car and started walking toward the car. A woman (later identified as Kay Lucia) got out of the car and, while walking toward the officer, made a throwing motion in the direction of an alleyway. Following the direction of her motion, the officer found a small white bindle which Kay Lucia identified as the object she had thrown. The bindle contained heroin.

Defendant testified that he met Kay Lucia in the bar that morning, also a person called "Steve"; that Kay asked him to drive her home and Steve asked to be driven to Van Ness and Eddy; that the three of them left in defendant's car; he dropped Steve at Van Ness and Eddy and drove to his own hotel to get his baggage before driving Kay Lucia home. He met the police officers at his hotel and went with them to find his car. He knew he had parked his car on Willow Street but he told the officers that it was parked at Eddy and Leavenworth. The officers found his car even though he did not tell them where it was actually parked.

*Upon cross-examination, she said he handed her the paper of heroin when he got back into the car at Van Ness and Eddy; that she had it in her possession thereafter until she threw it away.

When the police car pulled into Willow Street, Kay Lucia was either seated in defendant's car or walking down the street; defendant saw her throw something, but he did not know what it was. Defendant had not given a bindle of heroin to Kay Lucia; he had never used heroin; he had never seen a bindle except in magazine pictures; he never had in his possession "what has been termed here as an outfit" (needle and syringe); in 1951 or 1952 he pleaded guilty to using dolophine; he used it for migraine headaches and sinus condition. Upon cross-examination he said he took the dolophine in tablet form orally but that several times he used the liquid form and injected it by needle.

▮ Defendant's admittedly false and misleading statements to the officers concerning the location of his car when they were in search of it to examine it and possibly to examine the occupant when found, coupled with his contradictory statements as to whether he ever had or used a needle and syringe and his not too plausible explanation of the automobile trip with Kay and Steve, were sufficient to connect him with the commission of the crime in such a way as reasonably might satisfy the jury that the accomplice was telling the truth, and thus furnished sufficient corroboration.

▮ "Section 1111 of the Penal Code requires only that the corroborative evidence tend 'to connect a defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth. It is not necessary that the accomplice be corroborated as to every fact to which he testifies.' (*People* v. *Trujillo,* 32 Cal.2d 105, 111 [194 P.2d 681]; *People* v. *Henderson,* 34 Cal.2d 340, 342-343 [209 P.2d 785].)'' (*People* v. *Barclay,* 40 Cal.2d 146, 156 [252 P.2d 321].)

"Some of the cases state that the evidence must be 'inculpatory,' but this is used merely as another way of stating that it must tend to connect the defendant with the crime. (See *People* v. *Shaw,* 17 Cal.2d 778, 803-804 [112 P.2d 241]; *People* v. *Morton,* 139 Cal. 719, 724 [73 P. 609]; *People* v. *Reingold,* 87 Cal.App.2d 382, 392-393 [197 P.2d 175].)'' (*People* v. *Gallardo,* 41 Cal.2d 57, footnote on p. 62 [257 P.2d 29].)

▮ "It has been held that the corroborative evidence need not by itself establish that the crime was committed or show all the elements thereof, but it must relate to some act or fact which is an element of the offense. (See *People* v. *Barclay,* 40 Cal.2d 146, 156 [252 P.2d 321]; *People* v. *Yeager,* 194

Cal. 452, 473 [229 P. 40] ; *People* v. *Robbins,* 171 Cal. 466, 469-471 [154 P. 317] ; *People* v. *Josselyn,* 39 Cal. 393, 400-401; *People* v. *Lee,* 81 Cal.App. 49, 53 [252 P. 763].) ▮ It must create more than a suspicion, but it may be sufficient even though slight and entitled to but little consideration when standing by itself. . . . ((See *People* v. *Wilson,* 25 Cal.2d 341, 347 [153 P.2d 720] ; *People* v. *Kempley,* 205 Cal. 441, 455-456 [271 P. 478].)'' (*People* v. *Gallardo, supra,* 41 Cal.2d 57, 63.)

▮ ''Although it has been said that corroboration is not sufficient where the circumstances are consistent with the innocence of the accused (see, e.g., *People* v. *Davis,* 210 Cal. 540, 555 [293 P. 32] ; *People* v. *Kempley,* 205 Cal. 441, 461 [271 P. 478] ; *People* v. *Robbins,* 171 Cal. 466, 470 [154 P. 317]), the more recent decisions have held that whether the corroborating evidence is as compatible with innocence as it is with guilt is a question of weight for the trier of fact (see *People* v. *Henderson,* 34 Cal.2d 340, 347 [209 P.2d 785] ; *People* v. *Estes,* 99 Cal.App.2d 745, 747 [222 P.2d 454] ; *cf. People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]).'' (*People* v. *Gallardo, supra,* 41 Cal.2d 57, footnote on p. 63.)

▮ ''False and contradictory statements of a defendant in relation to the charge are themselves corroborative evidence. (*People* v. *Taylor* (1924), 70 Cal.App. 239, 244 [232 P. 998].)'' (*People* v. *Santo,* 43 Cal.2d 319, 327 [273 P.2d 249]. See also *People* v. *McLean,* 84 Cal. 480, 481 [24 P. 32] ; *People* v. *Ward,* 40 Cal.App.2d 143, 148-149 [104 P.2d 537] ; *People* v. *White,* 35 Cal.App.2d 61, 70 [94 P.2d 617] ; *People* v. *Rice,* 29 Cal.App.2d 614, 618 [85 P.2d 215].)

▮ (2) *One of the questions asked defendant upon cross-examination* was : ''Did you know, or do you know that dolophine is sometimes used as a substitute drug by heroin addicts?'' His counsel objected ''to the form of the question in that it calls for an expert's opinion, which the witness is not qualified to do and also, that it is completely misleading to the ladies and gentlemen of the jury, because it is putting to effect, a question that is not involved in this case, whatsoever.''

Upon direct examination he had testified that in 1951 or 1952 he pleaded guilty to using dolophine; that he had used dolophine for migraine headaches and for a sinus condition; that he had never had a bindle of heroin in his possession; had never used heroin in his life; had never had ''what has been termed here as an outfit'' in his possession.

That would seem to open the way for the challenged question, bringing it within the proper scope of cross-examination.

■ A defendant may be cross-examined as to all matters which were covered by his direct examination. (Pen. Code, § 1323; *People* v. *Tyren,* 179 Cal. 575, 580 [178 P. 132]; *People* v. *Gin Hauk Jue,* 93 Cal.App.2d 72, 74 [208 P.2d 717]; *People* v. *Ochoa,* 118 Cal.App.2d 566, 569 [258 P.2d 104].)

■ Moreover, defendant did not at the trial object on the ground that the question was beyond the scope of cross-examination. He thereby waived that objection. (*People* v. *Renek,* 105 Cal.App.2d 277, 283 [233 P.2d 43].)

■ *Another question now challenged as not proper cross-examination* was whether or not on July 11, 1952, at a certain street intersection, when accosted by police, he swallowed a bindle. He answered, ''no.'' Defendant's counsel then made an objection, the nature of which is not clear, one which he subsequently withdrew. A second question along the same line was objected to as having been asked and answered. It was reframed and he answered, without objection, that he did not on that date place a piece of paper in his mouth while driving an automobile when accosted by police officers. He was then asked if he recalled on that date or any other date placing in his mouth a paper of the general size and description of the bindle which was in evidence. His counsel objected that it was too general, that no foundation had been laid, that neither place nor time was stated. The prosecutor contended the question was proper as cross-examination, that impeachment was not his purpose. Upon the overruling of the objection, defendant answered: ''No, I never did; at no time did I ever swallow any paper in any shape or form.''

Defendant now contends that this series of questions was beyond the scope of cross-examination, but he waived that objection by failing to make it at the time. Besides, the questions were within the scope of cross-examination. Defendant had testified, on direct, that he never had possessed or used heroin and that he had never seen a bindle except in magazine pictures.

The judgment and the order denying a new trial are affirmed.

Peters, P. J., and Bray, J., concurred.