[Crim. No. 3131. First Dist., Div. Two. Nov. 21, 1955.]

THE PEOPLE, Respondent, v. R. C. TABB, Appellant.

Totton P. Heffelfinger II, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, J. Frank Coakley, District Attorney (Alameda), and Robert L. Anderson, Deputy District Attorney, for Respondent.

KAUFMAN, J.—Defendant appeals from a judgment of conviction after jury verdict on a charge of violating section 11500 of the Health and Safety Code, the unlawful selling, furnishing or giving away narcotics. He was charged also with a prior conviction of the same section. A plea of not guilty was entered, but the prior conviction was admitted.

On September 2, 1954, an agent of the State Bureau of Narcotic Enforcement, Major W. McBee, was introduced to appellant by Trosclaire, an informer and a heroin addict. They met opposite 3219 Filbert Street in Oakland, which was the address of appellant Tabb's art shop. Appellant was introduced as "Candy." Trosclaire had informed the agent that he thought appellant's last name was Yates. At this meeting Trosclaire told appellant that McBee wanted to get some marijuana. Appellant indicated that the price would be $15. McBee then gave appellant $15 and drove him to the vicinity of 37th and West Streets in Oakland. Appellant left the car and was gone for a few minutes. On his return he told McBee that the man he was looking for was not there. They returned to 3219 Filbert Street, and appellant gave back to McBee the $15. Appellant crossed the street to a phone booth, and apparently made a telephone call. On returning he told McBee that he was "all wasted away" and didn't have anything himself, that if McBee wished he would "hold out a can for him on the following day." This, according to the agent, in the parlance of the narcotics trade, meant that the person didn't have anything, that anything he had was gone at that time.

On the following day, September 3, 1954, McBee contacted appellant opposite the art shop at approximately 12:50 p. m. Trosclaire was present. Appellant entered McBee's automobile where he handed a paper bag to McBee. McBee asked him if it was $15 and appellant said "yes." McBee gave him the money. Appellant asked McBee if he wanted to look at it to see if it was any good. McBee opened the bag and saw a green leafy substance. This proved to be a one-half ounce of marijuana, which was introduced as People's Exhibit No. 1.

McBee, at the trial, positively identified appellant Tabb as the person with whom he had negotiated the narcotics purchase. He stated that appellant's appearance had changed since the date of the transaction in that he no longer had the "distinctive" goatee which he was wearing at the time of the sale. After the transaction McBee had gone through

the photographic files of the Oakland Vice Squad, located appellant's picture therein as the party from whom he had made the purchase. Appellant was apparently not arrested until sometime in October. The informer, Trosclaire, at the time of trial, was in a federal hospital for narcotic addicts.

Appellant testified that he had never had any contact with McBee prior to the preliminary hearing, and denied all of the incidents related by McBee concerning the narcotic transaction. He admitted that Trosclaire, a heroin addict, had been living with him for about two weeks prior to September 3, at 3219 Filbert Street, Oakland. He said that he first learned of Trosclaire's addiction about a week and a half after he came to live with him, and that he then asked him to move out, but since Trosclaire had no money, appellant could not turn him out in the cold. When asked if he had been previously convicted of a felony, appellant said that he had not, but on advice of counsel had pleaded guilty to a similar action. He admitted pleading guilty to two counts under section 11500, Health and Safety Code, for which he had spent two years in San Quentin and two years on parole.

Appellant contends that the questions asked by the prosecuting attorney and the statements made by him in argument constituted prejudicial misconduct and deprived him of a fair trial. The questioning which appellant assigns as prejudicial was as follows: "Q. This was not your first brush with a narcotic, was it, Mr. Tabb? A. No, it was not." "Q. Now, Mr. Tabb, have you ever been convicted of a felony? A. I have never been convicted of a felony, although on advice of counsel, I have pleaded guilty to a similar action. Q. Isn't it a fact, sir, that on April 8 of 1948, you were convicted in the Superior Court of the State of California in this County for two counts of 11500 of the Health and Safety Code? A. I wasn't convicted. My attorney advised me to plead guilty. Q. Didn't you go to San Quentin, sir? A. Yes. I did. I spent two years in San Quentin and did two years on parole successfully. Q. And this 11500 had to do with possession and furnishing of marijuana, didn't it? A. It did not. Q. It did not? A. It had to do with three marijuana cigarettes found on my front porch. Q. Possession of marijuana, is that correct? A. One count of possession, yes. Q. And a second count of furnishing marijuana, wasn't that true? A. That is what they said. Q. You, before listening to Major McBee on the stand here knew what

marijuana was then, didn't you? A. I was slightly acquainted with it, yes. Q. And you also knew some of the terms we have been speaking of like pot and bread and things of that nature? A. I am afraid I haven't been in that element for quite a while.''

It is to be noted that during this questioning no objections were interposed by appellant's counsel.

There is, of course, no question of the propriety of impeaching a defendant by showing that he has been convicted of a felony. (Code Civ. Proc., § 2051.) ██ Furthermore, questions are permitted to ascertain the nature of the offenses involved in the previous convictions. (*People* v. *Peete,* 28 Cal.2d 306, 320 [169 P.2d 924]; *People* v. *Garrow,* 130 Cal. App.2d 75 [278 P.2d 475]; *People* v. *Gardner,* 128 Cal.App.2d 1, 7 [274 P.2d 908].) Since, at first, appellant denied he had been convicted, further questioning was necessary to bring out the fact that he had actually been adjudged guilty of a felony. There can be no objections to the questions which call for the nature of the counts on which he was convicted. ██ Was there, then, anything objectionable about the three remaining questions which were asked to determine whether or not he was familiar with the narcotic marijuana? His answers to the prior questions were rather evasive, tending to create the impression that he may not really have known anything about marijuana, but that he was unfortunate enough to be caught with it on his premises. Therefore, since one element of the offense to be proved by the prosecution was appellant's knowledge that the substance which he dealt with was a narcotic, it was proper to bring out facts to show that he was familiar with marijuana. In *People* v. *Sykes,* 44 Cal.2d 166, 171 [280 P.2d 769], it was said that in circumstances where appellant had repeatedly denied the commission of the crime, it was within the permissible scope of cross-examination to ask if appellant had ever had narcotics in his possession. The court said that ''The evidence that at prior times he had narcotics in his possession was admissible to show familiarity with them.''

Appellant contends that the question of the district attorney went beyond the permissible purpose and tended to elicit testimony which in the minds of the jurors tended to prove that appellant had criminal tendencies and was likely to have committed a crime involving narcotics. He cites *People* v. *Musumeci,* 133 Cal.App.2d 354, 362 [284 P.2d 168], which holds that ''testimony tending to prove

inclination of an accused toward crime, thereby rendering more probable his guilt of the charge for which he is on trial, is inadmissible.'' The cited case cannot be said to parallel the situation here involved, for there defendant was questioned at great length to bring out the fact that he was a sex pervert, and the only purpose of doing so would be to show that he was inclined to commit a crime of the type with which he was then charged. Here appellant admitted to only a *slight* acquaintance with marijuana, and the prosecutor asked him but one more question concerning certain terms used in reference to the narcotic in order to show that his acquaintance therewith was something more than slight.

It may also be noted that since no objections were raised at the trial to these questions, appellant cannot raise them for the first time on appeal. (*People* v. *Wissenfeld*, 36 Cal.2d 758, 766 [227 P.2d 833] ; *People* v. *Simeone*, 26 Cal.2d 795, 806 [161 P.2d 369] ; *People* v. *Farrell*, 133 Cal.App.2d 427, 432 [284 P.2d 29].) In *People* v. *Newson*, 37 Cal.2d 34 [230 P.2d 618], cited by appellant, the testimony was received over objection of defendant's counsel.

It is contended that an instruction should have been given limiting the purpose of the evidence regarding appellant's prior conviction, on the court's own motion. There appears to have been no error in the failure to give such an instruction in this case, since, as determined above, the burden was on the prosecution to affirmatively establish the elements of the crime charged, hence knowledge of the nature of the narcotic on the part of appellant had to be proved. Proof of conviction for a similar offense was evidence bearing on appellant's knowledge of the nature of the substance with which he dealt. The court was therefore correct in not giving an instruction limiting this evidence to impeachment of appellant.

The district attorney in his argument to the jury, when discussing the informer, Kerry Trosclaire, characterized by appellant as an ex-addict, said: ''I don't think there is such a term as an ex-addict. At least, I have never heard it. It is an unfortunate thing about narcotics, once you've got it, and there isn't a case on record where anybody has ever been cured permanently. And it was elicited from McBee that Trosclaire is presently in a Federal hospital for treatment. Therefore, it certainly cast some doubt on Tabb's classification of Trosclaire as an ex-addict. That only goes to show knowledge on the part of Tabb here.''

No objection was raised to this portion of the argument at the trial. In *People* v. *Codina,* 30 Cal.2d 356, 362 [181 P.2d 881], it was held that alleged improprieties must be opposed at the time they are made and the court requested to admonish the jury concerning them, if they are to be made a ground of appeal. (See also *People* v. *Sutic,* 41 Cal.2d 483, 496 [261 P.2d 241]; *People* v. *Sampsell,* 34 Cal.2d 757, 763 [214 P.2d 813].) It is true, however, that the absence of objection will not prevent reversal where misconduct of the prosecuting attorney is "of such a character as to have produced an effect, which, as a reasonable probability, could not have been obviated by any instructions to the jury." (*People* v. *Robarge,* 111 Cal.App.2d 87 [244 P.2d 407].)

 Appellant says that the district attorney by the language quoted above, sought to link appellant in some way with Trosclaire's plight. Apparently the only purpose of the passage was to cast doubt on appellant's credibility when he classified Trosclaire as an ex-addict. The argument appears to be that since everyone should know that there are no ex-addicts, appellant was not truthful in thus characterizing Trosclaire. There is nothing in the language that could lead the jury to believe that appellant was an addict. In *People* v. *Duvernay,* 43 Cal.App.2d 823 [111 P.2d 659], cited by appellant, a case in which it was concluded that defendant had not had a fair trial, the prosecuting attorney in argument had stated that he didn't know whether this defendant was a user or not, and that defendant had many of the characteristics of a user.

 The district attorney, some time later in his argument, discussed the fact that the state agent, McBee, had no interest in sending an innocent man to jail, and went on to say that the jury must look to the motives of the witnesses, that admittedly it is difficult when there are so few witnesses, "but that is the nature of a narcotics case. Some narcotics cases are bigger than others where you get the large operators which, unfortunately, we can't lay hands on as often as we would like. You have a much more elaborate setup with stakeouts, continuous buys, or rather one buy right after another, and a good many witnesses than can be presented. *But this is just one piece or one link in the whole operation in West Oakland.*" The italicized language was objected to as prejudicial and the court told the prosecutor that he ought to confine himself to the record. Any error in making this remark was not prejudicial in view of the direct positive

evidence of appellant's guilt. Also, appellant's counsel at the trial was satisfied that the judge's admonition to the prosecutor to "confine himself to the record" was sufficient, since he did not ask that the remark be stricken or request that the jury be asked to disregard it, or request that the district attorney be reproved for misconduct. (See *People* v. *Sutic*, 41 Cal.2d 483, 496 [261 P.2d 241].)

There is no merit in the contention that the evidence is insufficient to warrant a verdict of guilty. Appellant's principal argument is directed at McBee's identification of Tabb. Much is made of the fact that McBee didn't know that appellant's name was Tabb at the time of the alleged transaction, that the informer had told McBee appellant's name was Candy Yates, but that McBee never made any investigation to determine whether there was such a person as Candy Yates. Furthermore, it is argued that the person McBee dealt with wore a goatee, whereas appellant was clean shaven at the time of trial. McBee identified a photograph, Plaintiff's Exhibit 2, as that of appellant as he looked on September 2 and 3, 1954. Appellant at the trial admitted that it was his photograph, and that on the aforementioned date he wore a mustache, goatee and beard which had later been shaved off in the county jail.

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 21, 1955.