[Crim. No. 2740. Third Dist. July 19, 1957.]

THE PEOPLE, Respondent, v. CLYDE GERALD CLAASEN, Appellant.

Blaine McGowan for Appellant.

Edmund G. Brown, Attorney General, and J. M. Sanderson, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This is an appeal by defendant from a judgment based on a jury verdict finding him guilty of violating section 288a of the Penal Code. A consideration of the points raised on appeal requires a statement of the substance of the evidence.

Witnesses for the People testified to the following: On July 28, 1956, appellant said to Roger ———, a 12-year-old boy whom he addressed on a public street in Arcata, California, "How would you like to make a few easy bucks?" Roger asked him how he was to do this and appellant told him to follow him to his car and he would explain. The two went to appellant's car and got in. Appellant started the motor and said "Let's go out of town and talk." The boy reached over and turned off the switch, saying "We can talk here." Appellant said "I will give you a dollar to go with me for a half hour and two dollars to go with me for an hour and later on, why, you'll start making thirty or forty bucks a week." Appellant did not explain what he wanted Roger to do. Another boy approached appellant's car and Roger asked appellant if the other boy could be let in on the work and was told "No, this is a one kid job." Roger was somewhat frightened. He refused to go with appellant. Shortly thereafter Roger saw his brother David, who was 13 years old, get into appellant's car and duck down as the car was driven into the street. A little later he saw him raise up and get into the seat. Roger met up with a companion and the two followed appellant's car until they met a third boy and the three went to the police station. This third boy, one Gary ———, testified that on the morning in question he saw appellant on a street talking to the brothers, saw him talking to Roger in appellant's car, and walked up to the car. He heard appellant say something about a job. He heard Roger ask appellant if he could be let in on it and heard appellant reply "No, this is only a job for one." After the three boys went to the police station Gary and Roger got into another boy's car and went searching for David and appellant. They failed to find the two and again returned to the police station. Then Gary, the boy with the car and the third boy took up the search again and met appellant with David coming down the road from the direction of appellant's cabin. They shouted at appellant to stop but he kept going, whereupon the boys turned about and followed. Appellant increased his speed until he was stopped by an officer.

Appellant testified that he had a number of guns in his cabin and some had been taken by someone who broke into the house. He formed an opinion that the guilty parties were a group of boys in town. He complained to the authorities about the burglary and when their investigations proved fruitless he hit upon a plan of getting one of the suspected group alone, taking him to the cabin where the burglary had taken place and by talking with him there gain information as to who had stolen the guns. He said he talked first to Roger, offering him a job and proposing that Roger accompany him, but that Roger would not go. He then talked to David, again offering a job, and David got in his car and they proceeded to appellant's cabin. There he showed David the remaining guns and talked to him for some time but failed to get any information and started to take him home after giving him a dollar for the time he had spent. He denied the commission of the crime charged.

David testified that appellant approached him on the street and asked him if he would "like to make a few easy dollars," that David replied he would and appellant asked him to follow him down to his car and get in; that appellant told him to duck down behind the front seat, which he did, and appellant drove a short distance and then told David to get up; that they then went to appellant's cabin; that when they were in the cabin appellant locked the door; that appellant had been drinking; that appellant showed him some guns; that after a time he told David that he wanted David to be his little boy; that David said he didn't want to; that appellant then told David that he (David) was going to commit fellatio on appellant; that appellant got upon a bed and exposed himself, then put one hand on David's head and one on the back of his neck and pushed him down to his knees and told him he had to proceed with the act. This the boy did. He stopped and was told to go ahead, started again, stopped again and protested it was making him sick; that appellant then told him he didn't know it would make him sick; that the two then left the cabin; that appellant gave him a dollar which he did not want to take, but upon appellant's insistence he did take it; that the two got in appellant's car and started to go back to town; that they met the other boys who honked the horn and shouted at them; that after appellant had passed without stopping the boys turned around and chased appellant's car; that appellant speeded up and when he got to the bottom of a hill an officer's car was there;

that appellant slowed down as he passed the officer and told David to tell the officer that he was a hitch-hiker; that the officer stopped appellant.

Appellant contends first that David was an accomplice and that his testimony is not sufficiently corroborated. He also claims that the district attorney was guilty of misconduct.

The trial court submitted the issue of David's accomplicity to the jury as a question of fact. By its verdict the jury impliedly found that he was not an accomplice. We think the action of the trial court was correct and that the evidence supports the jury's finding. The boy was asked on cross-examination if he knew that the act he did was wrong and he replied that he did. Nevertheless, the issue is not concluded by that testimony. The jury could have found that David did not participate willingly and that he assented rather than consented to participate in the crime. Such a finding is supported by the related evidence, particularly by the following facts as testified to by him: He went with appellant at the appellant's suggestion and through his connivance in that he was offered money without an explanation as to what he was to do for it except that thereby he would earn a few "easy" dollars. He was 13 years of age, whereas appellant was a man many years his senior. Appellant took him out of town and into his cabin, the nearest residence being several hundred feet distant. On entering the cabin the appellant locked the door. David's attention was called to the presence of several guns in the cabin. He was told by appellant to perform the act. Appellant prepared his body for the act, pushed David to his knees, and told the boy he had to go ahead. It is a fair conclusion that there was here nothing of willing participation or participation motivated by the intent to satisfy the boy's own sexual desires and throughout the actual copulation there was no release from the appellant's dominance, although the boy's unwillingness and reluctance was clearly manifested, until he convinced the appellant that he was being made ill by continuing. The jury could have found that the boy was acting under the dominance of the appellant after being taken to what amounted to a place of isolation and being locked into the cabin with appellant.

". . . [T]here is a decided difference in law between mere submission and actual consent. Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. 'Consent' differs very ma-

terially from 'assent.' The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent. . . . It is neither unreasonable nor unnatural to assume that such a child, in the hands of a strong man, might be easily over-awed into submitting without actually consenting." (*People* v. *Westek*, 31 Cal.2d 469, 474 [190 P.2d 9], quoting from *People* v. *Dong Pok Yip*, 164 Cal. 143 [127 P. 1031].)

Although the foregoing was said in a case involving violation of Penal Code, section 286, wherein mere passivity was more likely than in a case brought under section 288a of the Penal Code, nevertheless there is therein no such substantial distinction as places this case without the rule expressed in *People* v. *Westek, supra.* We hold that the jury under the evidence impliedly found the child was not an accomplice and that the evidence justified the finding.

What has already been said disposes likewise of the claim of appellant that the corroborative evidence was not sufficient, which claim is based on the assumption that the child was an accomplice. ▮▮ We think, however, that here also the record does not support the claim of error and that it does disclose sufficient corroboration to meet the test. We have already related the corroborative testimony as to the acts of appellant in taking David into his automobile and persuading him to accompany him to his cabin. We have also related the evidence as to his conduct when the boys who set out to find David attempted to intercept appellant as he was returning the boy to town. There was the testimony of appellant himself that he took David to his cabin and that upon their leaving the cabin he gave the boy a dollar. There was his offer of jobs both to the first boy contacted by him and to David without an explanation as to what the boys were supposed to do for the money offered. All of this adds up to sufficient corroboration. ▮▮ Section 1111 of the Penal Code requires only that the corroborative evidence tend " ' 'to connect a defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth. It is not necessary that the accomplice be corroborated as to every fact to which he testifies.' . . . Proof of the elements of the crime, as contrasted with proof of the connection of defendant with the commission thereof, may rest upon the uncorroborated testimony of an accomplice." (*People* v. *Barclay*, 40 Cal.2d 146, 156 [252 P.2d 321], and cases cited.)

▮▮ We hold that, assuming David to have been an accom-

plice, the evidence furnishes sufficient corroboration to meet the statutory test.

■ Appellant contends that the district attorney was guilty of prejudicial misconduct in referring to David at various times during the trial as the victim or the alleged victim. The record shows that in his opening statement to the jury David was referred to by the district attorney in both ways. Thereafter, while a witness for the People was being examined, the district attorney asked the witness if her daughter had "come home before the defendant and the victim." Counsel for appellant assigned the remark as misconduct and asked the court to instruct the jury to disregard it. The court did so. The district attorney stated that the reference arose from inadvertence, but shortly thereafter referred to David as the alleged victim. Counsel for the appellant again objected and asked the court to instruct the jury to disregard the remark. Again the court complied with the request. No motion was made for mistrial. We think it is clear that no prejudice was suffered by appellant in view of the prompt objections made and the prompt rulings advising the jury to disregard the reference to David as appellant's victim or alleged victim.

There being no other contentions of error, the judgment appealed from is affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.