THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FELICIANO ADORNO, k/a CHIQUITÍN, Defendant and Appellant.

No. 15779. Resubmitted February 13, 1959.—Decided September 10, 1959.

---

[3] See cases cited to this effect in *People* v. *Díaz, supra.*

*Romany & Romany* for appellant. *Hiram R. Cancio, Secretary of Justice (José Trías Monge, former Secretary of Justice,* on the brief) and *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant Feliciano Adorno was accused jointly with José M. Padilla and Francisco Casalduc for an offense of bribery committed, according to the information, as follows: "The afore-mentioned defendants José M. Padilla, Francisco Casalduc, and Feliciano Adorno, alias Chiquitín, on or about 1952 and within the Judicial District of the Superior Court of Puerto Rico, while acting as executive officers of the Insular Government, the first two (José M. Padilla and Francisco Casalduc) as corporals of the Police of Puerto Rico, in their capacity as detectives, and the third (Feliciano Adorno, alias

Chiquitín), being a *banquero*, unlawfully, wilfully, maliciously, and corruptly, offered and gave money to the other two defendants (José M. Padilla and Francisco Casalduc), for the purpose of influencing their actions as such officers, with the understanding and knowledge between the three defendants that by means of said bribe the two defendants José M. Padilla and Francisco Casalduc would not follow up, as they were bound to do, the violations of Act No. 220 of 1948, known as the *Bolita* Act, committed by defendant Feliciano Adorno, alias Chiquitín, or his agents in the operation of a clandestine *bolita* game."

As a consequence of our decisions in two appeals brought before this Court,[1] the district attorney served upon the appellant and the other codefendants a bill of particulars stating the following: "1—That the facts alleged in this information refer to different acts which occurred on different occasions; the proposal of bribery of defendants José M. Padilla and Feliciano Adorno, alias Chiquitín, having been made to defendant Francisco Casalduc on a Sunday in April 1952 near the house of defendant Francisco Casalduc in Arecibo, through detective José Luciano, who at the end of April or early in May 1952 delivered to defendant Casalduc by order of the defendants José M. Padilla and Feliciano Adorno, alias Chiquitín, the sum of $50 at the Clínica del Buen Pastor in Arecibo, as part of the bribe; and upon giving said sum to defendant Francisco Casalduc he was told to come to Padilla's house on the fifteenth of every month to get the $100 from Chiquitín, according to the original proposition. 2—That defendant Feliciano Adorno, alias Chiquitín, delivered to codefendant José M. Padilla, as a bribe, the sum of $600 in house No. DO–10 of Puerto Nuevo, where they met two or three days after December 24, 1952 and during the conversation held by codefendants Feliciano Adorno, alias Chi-

---

[1] *Ortiz* v. *Superior Court; People, Int.*, 75 P.R.R. 55; *Castro et al.* v. *Superior Court*, Certiorari No. 2016, decided on June 25, 1953.

quitín, and José M. Padilla, Adorno told Padilla that he, Padilla, had already taken the $600 of the fifteenth, referring to December 15, 1952. 3—That the district attorney has no information as to the specific days when the events alleged in the information took place, except as described above."

Defendants Padilla and Casalduc demurred to the information alleging that it charged the commission of more than one offense without stating them in separate counts. This motion was overruled. The other defendant, Adorno, requested a separate trial which was granted, but afterwards, on petition of the district attorney, the court reconsidered its ruling and ordered that the three defendants be tried jointly.

At the commencement of the trial and before the drawing of the jury, defendant Adorno requested the district attorney to elect the charge on which he would base his information against said defendant, that is, whether on the events which took place at Arecibo or on those which took place at Puerto Nuevo, as stated in the bill of particulars. The court also overruled this motion.

After the jury was impanelled and after the proper proceedings, the district attorney presented the evidence of The People against the three defendants. Once said evidence was presented, the defendants requested the court to order the jury to render a verdict of acquittal. The court so ordered with respect to defendant Francisco Casalduc and denied the petition with regard to the other two codefendants. Accordingly, the jury rendered a direct verdict declaring Casalduc not guilty, after which the trial continued with the introduction of the evidence of the defense offered by defendant Padilla. After the case was finally submitted to the jury, it rendered a verdict declaring José M. Padilla not guilty and another one declaring Feliciano Adorno, alias Chiquitín, guilty of the offense of bribery. Later, the court entered

judgment sentencing Adorno to a penalty of 5 to 10 years' imprisonment at the penitentiary.

Against said judgment defendant Adorno appealed assigning the commission of the following errors:

### First Error

"The lower court committed manifest error in not granting a separate trial in this case when it appeared clearly from the information and the bill of particulars that a great many different offenses were charged against the defendants, and the district attorney knew beforehand that he was going to present evidence which incriminated defendants José M. Padilla and Francisco Casalduc, but which positively did not incriminate defendant-appellant herein."

### Second Error

"The lower court erred in overruling the motion to dismiss the information presented in this case, since it was fatally defective with duplicitous offenses against different defendants which had been unduly included in the same information under a single count, in violation of § 77 of the Code of Criminal Procedure."

### Third Error

"The lower court committed gross error in this case in failing to order the district attorney to elect, insofar as defendant Feliciano Adorno was concerned, as to which of the different offenses alleged in the information and in the bill of particulars he intended to prove to support his information against Feliciano Adorno before the jury."

### Fourth Error

"The lower court erred in this case in permitting detective José Luciano, over the objection and exception of the appellant, to testify before the jury that Casalduc told witness Luciano that 'the District Attorney of Arecibo was interested in this case against Chiquitín.' "

### Fifth Error

"The lower court erred in failing to grant our motion to require the district attorney to state clearly his purpose in seeking to prove different acts of bribery committed with the defendant Padilla by independent third persons not included in the

information and owners of businesses in which Adorno had no part whatever and in which transactions Adorno had not intervened."

### Sixth Error

"The lower court erred in permitting in this case evidence on alleged bribes, among others, the one given by Carlos Cáceres, owner or manager of a place of prostitution, Carolina Summer Resort, to defendant José M. Padilla, and in which only detective José Luciano and defendant Padilla intervened, but in which neither Adorno nor Casalduc had any intervention whatever."

### Seventh Error

"The lower court likewise erred in permitting witness Luciano, over the objection and exception of the defendants, to testify on other alleged bribes supposedly committed by the owners of Hotel Mallorca, Hotel Carioca, with Nun, owner of a clandestine *banca* at the racetrack, and with the owner of El Bosque, and with Perfecto Segarra, and in which defendant-appellant Feliciano Adorno did not intervene or had an economic interest therein since it was an admitted and undisputed fact that Adorno had no connection with those transactions."

### Eighth Error

"The lower court erred in not permitting the defense and witness José Luciano to answer our questions on cross-examination as to what Colonel Roig told the witness in their private conference at Colonel Roig's office on the day after witness Luciano was caught in fraganti receiving money from Cáceres."

### Ninth Error

"The lower court likewise erred in unduly limiting the cross-examination of witness José Feliciano by not permitting said witness to say what was discussed in the conference with Captain Camacho on the day after he had been caught accepting a bribe from Cáceres."

### Tenth Error

"The lower court erred in permitting witness Víctor Barrios Cano to testify that on or about 1938 or 1939, he played dice, poker, and monte with Feliciano Adorno."

### Eleventh Error

"The lower court erred in not permitting witness Víctor Barrios Cano to answer the question asked by the undersigned as to whether he had talked with anyone before testifying in this case."

### Twelfth Error

"The lower court erred in permitting witness Perfecto Segarra Pérez to testify that on or about 1946 he worked with defendant Feliciano Adorno in a *bolita* game, since the date was very remote to the facts alleged in the information."

### Thirteenth Error

"The lower court erred in denying the motion presented by the defendant-appellant requesting the court to order the jury to return a verdict of not guilty in favor of defendant Feliciano Adorno."

### Fourteenth Error

"The lower court erred in this case in instructing the jury that the witness, detective José Luciano Rivera, was not an accomplice of Feliciano Adorno."

### Fifteenth Error

"The lower court erred in refusing to give the instruction requested by the appellant to the effect that the jury be instructed, as a question of law, that the witness, detective José Luciano Rivera, was an accomplice of Feliciano Adorno and that therefore his testimony should be corroborated with other evidence which apart from Luciano's testimony, connected the defendant-appellant with the commission of the offenses of bribery alleged in the information."

### Sixteenth Error

"The lower court erred in denying defendant Feliciano Adorno's motion to set aside the verdict of guilty rendered against Feliciano Adorno, on the ground that said verdict was absolutely inconsistent with the verdict of acquittal rendered by the same jury and on the same evidence in favor of defendant José M. Padilla."

Before discussing these errors it is necessary to summarize the evidence which supported appellant's conviction. The oral evidence connecting him with the commission of the

alleged offense, consisted in the testimony of detective José Luciano Rivera, of Víctor Barrios Cano, Perfecto Segarra Pérez, and María Isabel de Jesús. Said summary, as given by the trial judge to the jury, is as follows:

"To prove his theory, the district attorney introduced José Luciano Rivera as first witness. This witness testified in essence as follows:

"That he is 36 years of age, and lives in Santurce, that before residing in Santurce he resided in DO–10, Puerto Nuevo; that he is a detective of the insular police since 1940; that he joined as second class guardsman when he joined the police for the first time. That he enlisted in the armed forces in 1943 and remained in the Army until 1946 when he returned to the police as detective. That from 1946 to 1948 or 1949 he was stationed at Stop 19 as a policeman; in 1949 he was assigned to the Department of the Treasury in the division therein for the persecution of narcotics. That from 1950 to 1951 the witness formed part of the vice squad and was assigned to the metropolitan area.

"He testified that he knows the three defendants; that he knows Padilla since 1946 and Casalduc since 1947 or 1948. That when the witness began work in the squadron its chief was Costa; that after Costa, Pérez took command; and after Pérez, defendant Padilla headed it temporarily. That when Padilla was chief the squadron was composed of detectives Vázquez, Padilla, Díaz, Ramos, Aldamuy, Rivera, Santo Domingo, and he, Luciano, who was testifying. The witness said that he belonged to the vice squad ever since said squadron was organized. He testified that Casalduc was a detective corporal in Arecibo. That Feliciano Adorno is known by the name of Chiquitín. He testified that Chiquitín is a *bolitero* and that he operated the *banca* between Bayamón and Arecibo. He testified that he remembers seeing Casalduc in April 1952. He testified that he left with Padilla towards Arecibo on a Sunday in April 1952, from Padilla's house in Villa Caparra; that at that time the witness lived in DO–10, Puerto Nuevo. He testified that Padilla, the defendant, went to the witness' house and that from there they went to Padilla's house, and left for Arecibo from Padilla's house; they went through Manatí, where Mrs. Padilla and other people who were in the automobile stayed, among

them two little girls, and an American couple, the man by the name of Richard. That on the way from Manatí to Arecibo, Padilla and the witness talked; that Padilla told the witness that they were going to talk to Casalduc, to offer him $100 in Chiquitín's name, provided that Casalduc would not pursue Chiquitín in Arecibo in the bolita game. That the witness asked corporal Padilla on that occasion, going from Manatí to Arecibo, whether that was dangerous. That upon arriving at Arecibo, in the intersection of the road leading from Arecibo to Utuado, they stopped there in front of a bar and asked where policeman Casalduc lived. That Padilla stayed there and the witness Luciano went out to find Casalduc's house. That then the witness called at the house and Casalduc came out and they talked in front of the house. That the witness told Casalduc that Chiquitín was offering him $100 a month provided he would not follow up his game. That Casalduc then told him that he had to think it over because the District Attorney of Arecibo was interested in pursuing Chiquitín. At this point the witness came back and met Padilla again where he had left him, in front of the bar in the intersection of the road leading from Arecibo to Utuado, and informed Padilla of the conversation with Casalduc. That they came to San Juan and the witness remained in Puerto Nuevo and Padilla went home.

"The witness said that he returned to Arecibo with Padilla at the beginning of May, to take $50 to Casalduc, about which the witness had talked to Casalduc on that Sunday in April. They arrived again on that day at the road leading from Arecibo to Utuado; that Padilla then stayed at the bar, that the witness went to Casalduc's house; that when he got there a woman came out and explained to him that Casalduc was not there; that he was confined in the Clínica del Buen Pastor in Arecibo. Then Luciano went from the house to the bar near the intersection, where Padilla was; then Padilla and the witness went to the Clínica del Buen Pastor to take the $50 to Casalduc; that Padilla stayed behind, near the hospital, and the witness called at the hospital and knocked at a glass door; that when he knocked, a nurse of the hospital looked out through the window which is in that same direction but on the second floor; that it was a nurse with a blue dress and a cap; that the witness then told her that he wanted to see Casalduc; then the nurse went inside and a few minutes later Casalduc came out through the main door where he had knocked; that there

Casalduc received the $50 and the witness told him, after giving him the money, to come on the 15th of every month to get the $100 that Chiquitín would send him.

"That from there the witness and Padilla left for San Juan; he testified that neither of the two signed the registry at head-quarters that a policeman must sign when he returns from a trip to another district; they did not go to the station nor reported their return or exit to that district.

"He testified that Feliciano Adorno lives in Santa Teresita next to the development near Loíza Street. He testified that he saw Feliciano Adorno on December 1952 and also two or three days after the 24th of said month and year. That Padilla had told the witness to go and talk to Feliciano Adorno in order to tell him to go and see Padilla so that Adorno could give Padilla his bonus. That corporal Padilla went that day at around 6:30 p.m. to the witness' house and on that day the witness gave Chiquitín the message; that Chiquitín went to the witness' house at around 7:30 or 7:45 p.m. and that there Chiquitín met Padilla; that when they were all together, the witness went to the bathroom and after being there for a while he came out and sat in the living room with Chiquitín and Padilla; that Chiquitín was telling Padilla at that moment that a *bolita* game in Dorado was causing him damage; that Padilla answered him that it had already been caught, that Chiquitín then offered him some information on the Dorado game; that then Padilla asked Chiquitín for an additional month's bonus; that Chiquitín offered him $500 but that Padilla asked for $600, and then Chiquitín gave them to him; that he handed them in $100 and $50 bills, and told him 'you are asking the most.' That then Chiquitín left and Padilla stayed with the witness; that Padilla offered the witness a present and then he left the witness' house.

" . . . . . , . .

"The second witness who testified was Víctor Barrios Cano. This witness testified that he is 35 years of age and lives in Barrio Obrero; that before he was engaged in the business of pigs which he now runs he was engaged in the business of gambling. That from 1947 to 1950 he operated a *bolita* game in the metropolitan area and in these neighboring towns; that he began the game with the amount of $27,000 that he had won in a lottery prize in Puerto Rico. He testified that he knows defendant Padilla; that he knows Feliciano Adorno and has

known him for about 15 years; that he, the witness, talked with Adorno between the months of October and December 1952; that he talked about the *bolita* game and Feliciano Adorno's connections with the police; that in one of those conversations Feliciano Adorno asked the witness to find out who 'El Rubio' was because Feliciano wanted to eliminate him from the *bolita* game in 24 hours. This witness says that Feliciano Adorno told him that he gave Padilla $500 a month provided he would not pursue him; and Adorno told the witness that he, Feliciano Adorno, had control over the police from Cataño to Arecibo, and that the chief detective of the vice squad in Arecibo was among them. That he saw Chiquitín once more after that occasion and again mentioned the *bolita* game and 'El Rubio'; that he told Feliciano Adorno, when the latter asked him to find out who 'El Rubio' was, that when the witness was engaged in the *bolita* business, he gave away money but not information. That he saw Padilla around Stop 22 between the months of November and December, when Padilla entered Club 22 one night, that Chiquitín, with whom he was talking, told the witness that he was leaving because he had to talk to Padilla. That after Chiquitín left, the witness entered Club 22 and saw Padilla and Chiquitín at two different tables but close to each other; that when they were there in that position, Chiquitín and Padilla talked.

"This witness testified that he and Chiquitín were partners in the game, that they played dice, poker, and also monte. The witness testified that he knows Padilla since 1948; that he talked with him on several occasions between 1948 and 1950; that there were times when the witness gave money to Padilla; that between October and December 1952 he knew that Feliciano was engaged in the *bolita* game. That Chiquitín once told the witness that the proceeds of his business ranged from ten to $12,000 a week in collections. The witness testified that he had been in jail; that he lives in Barrio Obrero; that he also lived on Carpenter Road. He testified that he had a gambling business on Stop 22, and that he kept it for four months; that that business netted him more than $200 a week; that he eliminated it by February 1952; that he does not remember who was the chief of the squadron; that he sold the prize lottery ticket of $27,000 to Chichi; that he knows that Chiquitín is a *banquero*, by the conversations that he has had with Chiquitín himself. He testified that the witness was once caught with a safety box

with *bolita* and a revolver which belonged to a certain Mr. Beltrán. This witness testified that he had testified before the district attorney and that was, in essence, his testimony.

" . . . . . . . . .

"The next witness who testified was Perfecto Segarra Pérez. He said that he lives in Río Piedras, that at present he is a business man; that before being in business he threw *bolita* with a shake bottle; that he began throwing since 1944 or 1945 and continued up to 1948; that in 1949 he set up a gambling house in Río Piedras. He testified that he knows defendant José M. Padilla, that he knows Pacheco and Diego Ortiz who are detectives; that he is acquainted with Padilla; that in 1948 Padilla went to the witness and asked him for $150; that they agreed that he would give him $100 monthly for Padilla, Diego Ortiz, Pacheco and another one, provided they would not pursue him in the *bolita* game. That when he had the gambling house he continued giving him the $100; that while he gave the money he was not pursued; that at first he delivered it personally but later left it with Bartolo Santiago, who at that time owned a gambling house.

"That the witness knows Feliciano Adorno; that he has worked with him in a *bolita* game as his assistant in adding up the collection; that this was in 1946; that he worked with Adorno for only two months; that the witness has been in prison a few times; that he has been in prison more than three or four times for aggravated assault and battery and for carrying weapons, among other crimes. That Padilla, Diego Ortiz, and others, caught him in the *bolita* game. That Padilla has filed several complaints against the witness for illegal games; that Padilla and other detectives framed him with the *bolita* game in Canóvanas; that he was acquitted because his automobile was seized in Canóvanas. That they went to ask the witness for the money in March or April 1948; that they asked for it in Barrio Obrero. That at the trial, which he calls a frame-up trial, Judge Torres Aguiar sat in the case, and the attorneys for the defense were Ángel Díaz and Rafael V. Pérez Marchand. That the witness made six or seven monthly payments of $100 to Padilla; that when Padilla passed by in his jeep, the witness followed him and delivered the $100 on a street; that the witness, who had a gambling house, closed it at the end of 1949; that he did not verify with Padilla whether

Bartolo had given the latter the $100 that the witness at certain times sent him with Bartolo Santiago. He said that the search carried out by Padilla and other detectives was in Canóvanas, and that it was on a Tuesday in 1950; that the witness, during the trial, did not tell the judge that he paid Padilla to be left alone; that at the trial he and another witness testified and some detectives testified against him; that no warrant was made out to search his car; that that was brought at the trial.

"He said that Adorno, on or about 1948, asked the witness for a loan of $1,500, which Adorno returned to him about two months later. That in 1950 Adorno lent him $700; that the latter told him at that time when he got the $700; that he (Adorno) had a business of oil and horns for automobiles, and that the witness returned the $700 to Chiquitín about 15 days later; that he had asked Chiquitín for a larger loan, but that the latter told him that he only had $700 with him; that he would lend them to him provided he would return them 15 days later because he needed them to take out some merchandise from storage.

"Afterwards María Isabel de Jesús continued testifying. She testified that she knows Feliciano Adorno; that on Thursday, January 15, 1953, the witness saw him at about six thirty or seven in front of her house; that Adorno told her that he wished to see Luciano; that she went for Luciano and later told Adorno that Luciano did not wish to see him. Adorno asked her if she had told Luciano who had asked to see him, and she answered yes. This witness testified that she married Luciano on January 22, 1953; that she does not remember when she divorced her former husband; that she knows Luciano since July 1951." (Fifth piece at 1444–49; 1454–56; 1465–68.)

The district attorney also presented oral and documentary evidence tending to prove that codefendant José Padilla received money through Luciano, as a bribe, from several places of prostitution, from the operators of a clandestine *banca* at the racetrack, and from another illegal business where games prohibited by law were played. In these transactions appellant Adorno did not intervene neither directly nor indirectly and the trial judge instructed the jury that they

could not take into consideration said evidence against Adorno.

▇▇▇▇ The district attorney filed only one information against the three defendants alleging that they had acted in common agreement and with a common purpose in committing the offense of bribery.[2] Pursuant to the provisions of § 238 of the Code of Criminal Procedure (34 L.P.R.A. § 717),[3] they were tried jointly before a jury with the result that we already know. Defendants Padilla and Casalduc timely filed a demurrer against the information on the ground that therein they were charged with the commission of more than one offense. In our opinion the lower court acted correctly in dismissing this demurrer.[4] Although Padilla and

---

[2] Two or more offenses may be alleged in the same information or complaint under the authority of § 77 of the Code of Criminal Procedure (34 L.P.R.A. § 132), which provides:

"Two or more offenses may be alleged in the same information or complaint each in a separate count, if the said offenses are of a like or similar nature or have arisen from the same action or transaction or from two or more actions or transactions related to each other or constituting parts of a common plan. The allegations of one count may be incorporated into the others from reference."

[3] Section 238 of the Code of Criminal Procedure provides:

"When two or more defendants have been jointly charged with any public offense they shall be tried jointly unless the court shall direct separate trials. In directing separate trials, the court may, in its discretion, direct a separate trial for one or more of the defendants, and a joint trial for the rest of the defendants; or it may direct that any number of defendants be tried in a single trial and any other number of the rest of the defendants be tried separately; or it may direct a separate trial for each one of the defendants." (34 L.P.R.A. § 717.)

[4] Padilla and Casalduc were charged with the offense of bribery defined in § 83 of the Penal Code (33 L.P.R.A. § 273), which provides:

"Every employee, executive or administrative officer of the Commonwealth or Municipal Government or of any agency, board, or public corporation, whether Commonwealth or municipal, and every person elected or appointed to an executive office, who asks, receives, or agrees to receive, any bribe, upon any agreement or understanding that his vote, opinion, or action upon any matter then pending or which may be brought before him in his capacity as such employee or executive or administrative officer shall be influenced thereby, shall be punishable by imprisonment in the penitentiary for a minimum term of one (1) year or a maximum term of fourteen (14) years, and shall,

Casalduc are not parties in this appeal since both were acquitted of the offense charged, we have referred to the demurrer filed by them because appellant herein assigns as error the order dismissing it. However, since the appellant did not demur to the information timely and properly, he can not raise this question on appeal. Sections 152 and 154 of

---

in addition, forfeit his office and be disqualified for life to hold a public office."

In the information they were charged with having "asked, agreed to receive and received money in legal tender of the United States of America as a bribe from a third person (Feliciano Adorno, alias Chiquitín)." The single charge that the defendants *asked, agreed to receive, and did receive* money as a bribe does not make the information bad for duplicity. On former occasions we have adopted the doctrine that when upon defining an offense the statute enumerates a series of acts, only one of which separately or all together constitute the offense, two or more of said acts can be charged in only one count, since they all constitute a single offense. In *The People* v. *Vázquez*, 20 P.R.R. 338, the defendant was charged with having "solicited, asked for, received, and agreed to receive a bribe of more than one hundred dollars." In passing on the attack on the information for duplicity this Court said at 341: "We agree that the crime may be committed in any of the said ways—asking for a bribe, receiving it or agreeing to receive it—but when all three acts are committed at the same time and a person is charged with them as successive acts of a single transaction, they constitute, as in the present case, one single crime." See also, *People* v. *Echavarry et al.*, 28 P.R.R. 6; *People* v. *Del Valle*, 54 P.R.R. 41; *People* v. *Labrador*, 57 P.R.R. 672; *People* v. *Palacios*, 66 P.R.R. 906; *People* v. *Gusti*, 113 Cal. 177; *People* v. *Eagan*, 116 Cal. 287; *People* v. *Ellenwood*, 119 Cal. 166; Fricke, California Criminal Procedure (3d ed. 1952), 99 and 100. Substantially § 77 of our Code of Criminal Procedure is identical to Rule 8(a) of the Rules of Federal Criminal Procedure. (William H. Whitman, Federal Criminal Procedure (1950 ed.), 70 *et seq.*) In the interpretation of this rule the federal courts have held the same doctrine with regard to defect by duplicity in an accusation. See *United States* v. *Crummer*, 151 F. 2d 958; *cert. den.*, 327 U.S. 785; *Turner* v. *United States*, 16 F. 2d 535; *Dell'Aira* v. *United States*, 10 F. 2d 102; *Silkworth* v. *United States*, 10 F. 2d 711, *cert. den.*, 271 U.S. 664; *United States* v. *Kemler*, 44 F. Supp. 649; *United States* v. *B. Goedde & Co.*, 40 F. Supp. 523. The federal doctrine also recognizes that duplicity is not involved in an information where it charges several related acts all of which constitute a single offense although such acts may in themselves constitute distinct offenses. *United States* v. *Riedel*, 126 F. 2d 81; *Blackmon* v. *United States*, 126 F. 2d 214; *Rowan* v. *United States*, 281 Fed. 137, *cert. den.*, 260 U.S. 721; *Bridgeman* v. *United States*, 140 Fed. 577; *United States* v. *Atlantic Commission Co.*, 45 F. Supp. 187. For other exceptions to plural offenses or duplicity, see II Cyclopedia of Federal Procedure 418, § 42.109.

the Code of Criminal Procedure. *The People* v. *Morales, alias Yare Yare,* 14 P.R.R. 227; *People* v. *Echavarry,* 28 P.R.R. 6; *People* v. *Torres,* 48 P.R.R. 38. But this does not prevent us from considering the information upon examining the error concerning the refusal of the lower court to order the district attorney "to elect insofar as it concerned defendant Feliciano Adorno, as to which of the different offenses charged in the information and in the bill of particulars he intended to prove to support his information against Feliciano Adorno before the jury." This assignment of error entails the determination of whether defendant Adorno was submitted to trial under an information charging the commission of two offenses in one count and whether the error, if committed, was cured in any way during the trial, so as to protect the right of every defendant to a fair and impartial trial.

■■ In view of the fact that the information does not state the place, date, and other circumstances of the transaction of the bribe offered and given by Adorno to corporals Padilla and Casalduc, we can accept, without deciding it, that it does not appear from its face that more than one offense was charged against the appellant. However, after examining the bill of particulars submitted to the defendants by the district attorney, the evidence of The People introduced at the trial and the instructions given by the judge, it can be seen that appellant Adorno was prosecuted before the jury for (1) having offered detective corporal Francisco Casalduc, on a Sunday in April 1952, through detectives José M. Padilla and José Luciano Rivera, a bribe of $100 a month so that said officer would not pursue him for the violations of the Act in the operation of a *bolita* game in Arecibo, and for having given Casalduc, at the beginning of May of the same year, through Padilla and Luciano, the sum of $50 as part of said bribe, and (2) for having given Padilla towards the end of December 1952 and in Puerto Nuevo, a bribe of

$600, so that the latter, as chief of the vice squad, would not follow up the violations of the *Bolita* Act committed by Adorno or his agents in the metropolitan area.

The district attorney maintained that appellant Adorno was charged with only one offense of bribery in the information. The trial judge shared that view and after saying that the offense of bribery partakes of the nature of the offense of fraud to the public treasury, in which several appropriations can be joined so as to be included as a single offense, the judge said: "By analogy, in a case of bribery, if it is alleged that a person offered and gave different amounts on different occasions, there is no doubt that he can be prosecuted separately for each and every one of the times that he offered and gave money; but if the prosecution elected to charge only one transaction and only one accusation, that benefits the defendant and does not prejudice him." [5]

Of course, it is obvious that if a person commits several offenses of bribery, or of any other nature, and is charged with only one of them, he is benefited because if convicted he would be subject to only one penalty; but that is not the cause of appellant's complaint in this case. The problem at

---

[5] On several occasions we have said that the offense of embezzlement is committed after the accused is legally in possession of the property, that is, at the time of the fraudulent appropriation. *People* v. *Ríos*, 69 P.R.R. 774; *The People* v. *Díaz et al.*, 23 P.R.R. 239. When the offense is committed by experts in accounting it is very difficult to fix the exact date of each one of the appropriations and that is why the information for a series of appropriations has been permitted as if one of them constituted only one offense. *People* v. *Pérez*, 47 P.R.R. 724, 742. We have also followed the doctrine adopted by the majority of the United States courts to the effect that the embezzlement of funds in small sums belonging to only one person, for a period of time, if prompted by only one plan or design, constitutes only one offense. The doctrine is the same when the goods belonging to different persons are fraudulently appropriated at the same time and in the same place. A study of American cases reveals that the adoption of these doctrines is prompted by a rule of necessity, that is, the impossibility of proving the exact date, place, and amount of goods fraudulently appropriated which are legally in the possession of the accused. *People* v. *Rosario*, 80 P.R.R. 604. The analogy between the offenses of embezzlement and bribery is obviously not very clear.

issue is one of procedural character, which as appellant maintains, could have deprived him of his right to a fair trial. He complains that the prosecution against him placed him in an embarrassing situation before the jury because the latter was confronted with evidence of two different transactions, each one of which constituted a separate offense of bribery, and that even though nine members of the jury did not agree as to appellant's guilt in one or another transaction, they could still return a verdict of guilty, if a number of them, say only five, believed that the defendant had committed bribery in Puerto Nuevo upon offering and giving $600 to corporal Padilla, and a like number believed that the defendant had bribed corporal Casalduc in Arecibo, in the manner related in the evidence, although they did not believe that he was guilty of the bribe committed in Puerto Nuevo.

 General tests for determining whether one or more offenses are involved or charged include (1) whether differing elements constitute the offenses in question; (2) whether different proof of the offenses is required, and (3) whether the words employed in the information present to common understanding the charge of a single offense.[6] We must determine, therefore, whether there were two offenses involved in the present action against Adorno.

It should be noted that although it is true that the information charges that the three defendants, Casalduc, Padilla, and Adorno, committed bribery in common agreement and with a common purpose, the alleged offense is not the substantial offense of conspiracy but rather that of bribery. *People* v. *Eagan, supra.*

In our opinion the evidence tended to prove that appellant Adorno committed two similar offenses. One of them consisted in having offered and given $600 to corporal Padilla on December 1952 in Puerto Nuevo so that this officer would not follow up the violations of the *Bolita* Act that said ap-

---

[6] II Nichols, Cyclopedia of Federal Procedure 417, § 42.107.

pellant or his agents would commit in the metropolitan area. This transaction contains all the elements of the offense of bribery defined in § 82 of the Penal Code.[7] The same can be said of the other transaction carried out in Arecibo. Adorno committed the offense of bribery in offering corporal Casalduc, through his agent Padilla and Luciano, the sum of $100 a month and in giving him in the same manner, in May of the same year, as part of that bribe, the sum of $50 so that Casalduc would not pursue Adorno in the operation of his bolita game in Arecibo. However, each transaction required different evidence. The evidence introduced by The People to establish the transaction in Puerto Nuevo with corporal Padilla would not prove the transaction in Arecibo with corporal Casalduc. This is so because if from detective Luciano's testimony we eliminate everything that he said concerning his two trips to Arecibo with corporal Padilla, and the offer and delivery of the money that he made to corporal Casalduc in Adorno's name, there would only remain in the record proof of Adorno's bribe to Padilla in Puerto Nuevo, since apart from detective Luciano's testimony the only other substantial evidence in the record on Casalduc's bribe consists of the admissions made by appellant Adorno to witness for the prosecution Víctor Barrios Cano to the effect that he (Adorno) had control of the chief of the vice squad in Arecibo, so that he would not pursue him in his bolita business. It is evident then, that without the help of Luciano's testimony the evidence of The People would have been insufficient to prove the bribe to Casalduc by defendant Adorno. There-

---

[7] We agree with the *Fiscal* of this Court in that the offense of bribery established in § 82 of the Penal Code consists of the following three elements:

(1) Giving or offering any bribe;

(2) The giving or offering is made to any executive officer of Puerto Rico, and

(3) The giving or offering is made with intent to "influence him in respect to any act, decision, vote, opinion, or other proceeding as such officer."

fore, the two transactions, the one at Arecibo and that of Puerto Nuevo required different evidence. Both could not be established with the same evidence. Consequently, we must reach the conclusion that in the prosecution against Adorno two separate offenses of bribery were involved.

 Since both offenses are of a like or similar nature and constituted part of a common plan (bribing the police in San Juan as well as in Arecibo so that it would not follow up Adorno's *bolita* game), the district attorney could charge the appellant with both offenses in the same information, a separate count for each offense.[8] The district attorney, however, decided to file a one-count information against the three defendants. The prejudicial effect on appellant in so doing, as he alleges, could have been avoided if the judge had consented to his petition to order the district attorney to elect as to which transaction or offense he would rely upon for conviction without being precluded from presenting evidence of the other transaction under the well-known doctrine that, by exception to the general rule, evidence of other offenses is admissible to show intent, motive, or a common plan; *People* v. *Archeval*, 74 P.R.R. 478—but that in such case the deliberation of the jury would have been limited to determining whether or not the defendant committed the offense which by election, the district attorney tried to prove, although, of course, he could consider, for the purposes already stated, the evidence of the other offense.[9]

---

[8] See § 77 of the Code of Criminal Procedure copied in footnote 2, *supra.*

[9] We do not find in our Code of Criminal Procedure any provision whatever on the right of the accused to request The People, under certain circumstances, to elect the charge on which the information will be predicated. However, this remedy of requesting the election arises from the necessity that defendant have a fair trial, free from disadvantages and embarrassing situations. Some statutes and rules of criminal procedure in other jurisdictions refer to this remedy. Thus, for example, the Penal Code of California (§ 954), provides that an accusatory pleading may charge two or more different offenses connected in their commission, or different statements of the same offense or two or more different offenses,

The defendant-appellant would be right were it not for the fact that the whole proceeding was conducted by the judge under the theory that the defendant was being tried for a single offense of bribery and that it was under this theory that he submitted the case to the jury. Thus, we see that with respect to appellant Adorno, the judge gave the following instruction to the jury:

"If, as a result of the evidence offered by the district attorney, you should find proven beyond a reasonable doubt, that Feliciano Adorno, alias Chiquitín, on the date to which the information and the bill of particulars refer, is the person accused here of having offered and given money to codefendant José M. Padilla, so that the latter would take it for himself, and also offered him money so that he would offer it to Casalduc, to keep both Casalduc in Arecibo and Padilla in the metropolitan area from pursuing him or filing a complaint against him, or harming his *bolita* business, if that is proven, it is your

of the same class, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. Said section also provides that the prosecution is not required to elect between different offenses or counts set forth in the accusatory pleading, but that the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court. Said section also grants discretion to the court so that in the interest of justice and for good cause it may order that the different offenses or counts set forth in the accusatory pleading be tried separately or in groups.

When this § 954 was originally approved in 1872, it prohibited the charging of more than one offense in an indictment or information. In the following years it underwent some amendments but it was not until 1905 that it authorized the charge of different offenses in an indictment or information, under separate counts, provided they were all related to the same act, transaction, or event, and had not occurred at different times and places. It was also provided by virtue of that amendment that the prosecution was not required to elect between different offenses or counts set forth in the indictment or information, but the defendant could be convicted of but one of the offenses charged, and the same must be stated in the verdict. The 1915 amendment authorized the charging in an indictment or information of two or more different offenses connected together in their commission or different statements of the same offense, or two or more offenses, or two or more different offenses of the same class, under separate counts, and it was provided that the defendant may be convicted of any number of the offenses charged, which must be stated in the verdict. Finally, this section was amended in 1951, so as to provide

duty to bring in a verdict of guilty of bribery against Feliciano Adorno. If those facts are proven beyond a reasonable doubt, it is your duty to declare defendant José M. Padilla guilty in one case and Feliciano Adorno guilty in the other case." (Fifth piece at 1495–96.)

Pursuant to this instruction the jury could not render a verdict of guilty against Adorno if it did not find proven, beyond reasonable doubt, the two transactions, that is, that of Arecibo and that of Puerto Nuevo. In other words, it was not enough, pursuant to this instruction, for the jury to believe that Adorno had bribed Casalduc or had bribed Padilla, or for some of the jurors to believe that the bribe to Casalduc had been proven and for others to believe that the bribe to Padilla had been proven, in order for them to render a verdict of guilty. The reason is that the instruction was not given in the alternative because as we have seen,

what we expressed at the beginning of this commentary. (See West's, Annotated California Codes (Penal), 299, § 954.)

In the case of *People* v. *Hatch*, 109 Pac. 1097 (1910), Hatch was charged with an offense of embezzlement. The evidence proved that the defendant had committed more than one offense of embezzlement. The district attorney did not elect between the different offenses nor did the judge in his instructions to the jury limit the latter to the consideration of but one of the said offenses. The defendant was convicted and the judgment was reversed on appeal and a new trial ordered. The court said at 1102:

"Where several substantive offenses have been proved, either one of which would support a verdict of guilty under the indictment charging one offense, the district attorney should elect as to which offense he will rely upon for a conviction. People v. Castro, 133 Cal. 11, 65 Pac. 13; People v. Williams, 133 Cal. 165, 65 Pac. 323; Edelhoff v. State, 5 Wyo. 19, 36 Pac. 627; Goodhue v. People, 94 Ill. 37; West v. People, 137 Ill. 189, 27 N. E. 34, 34 N. E. 254; State v. Crimmins, 31 Kan. 376, 2 Pac. 574; Mayo v. State, 30 Ala. 32; Stockwell v. State, 27 Ohio St. 563; Bainbridge v. State, 30 Ohio St. 264."

And thereinafter at 1103, it stated thus:

". . . Nevertheless the course pursued by the district attorney has resulted in an error prejudicial to the defendant in a vital right. The court instructed the jury that 'if you should find that the defendant was the agent, attorney, or trustee of Sarah E. Sage, and as such agent, attorney, or trustee he received her money as charged in the indictment, and within three years prior to March 23, 1908, fraudulently appropriated it to an amount above $50 not in the due and

the instruction required that for a verdict of guilty, the jury should find both bribes proven, that of Casalduc as well as that of Padilla.

Even in the cases in which the remedy of election lies, the error committed by the court in refusing it, is cured, as it happened here, by an adequate instruction to the jury. See *People* v. *La Mantain*, 201 P. 2d 598; *Bailey* v. *United States*, 278 Fed. 849; *Wiborg* v. *United States*, 41 L. Ed. 289.

Under these circumstances we can not agree with the appellant that the refusal of the court to order the district attorney to elect the charge as to which he would rely to support the information deprived him of a fair and impartial trial. The bill of particulars informed him explicitly of the

---

lawful execution of his trust, but to his own use and benefit, you must find the defendant guilty as charged in the indictment.' If there had been but one offense of embezzlement proven by the evidence this charge would have been correct; or if the court had limited the jury in clear and explicit language to the consideration of but one of the offenses proven. But in the case at bar, under the one charge set forth in the indictment several distinct and separate fraudulent appropriations had been proven, and no election had been made as to which was the substantive offense upon which the indictment was predicated. Under this instruction, in the condition of the evidence in the record, the jury could bring in a verdict of guilty as charged, although each juror founded his verdict upon a different offense from that considered proven by every other juror in the box. Under this instruction, the several jurors could range over the evidence at will, and pick out any one of the dozen or more offenses proven, and found his verdict thereon. No court can say from this record of which offense proven under this indictment the jury found the defendant guilty."

In *People* v. *Simon*, 131 Pac. 102 (1913), citing the case of *Hatch* and others it was said, at 103:

"It may not be disputed that where, in a trial under an indictment charging but one offense, evidence is introduced sufficient to prove two or more separate and distinct offenses, either one of which would support the charge in the indictment, an election should be required if requested. People v. Castro, 133 Cal. 11, 65 Pac. 13; People v. Williams, 133 Cal. 165, 65 Pac. 323; and People v. Hatch, 13 Cal. App. 521, 109 Pac. 1097."

Section 77 of our Code of Criminal Procedure is substantially equal to Rule 8 (a) of the Federal Rules of Criminal Procedure. Said Rule 8 (a) provides:

facts and charges which he had to face at the trial, the jury was told that it should find those facts proven, beyond a reasonable doubt, to render a verdict of guilty, and although those facts established the commission of two offenses of bribery, he was convicted and sentenced for a single offense. The appellant, therefore, far from receiving prejudice, was benefited with the imposition of a single penalty for the acts committed by him.

 We pass now to consider the errors assigned under numbers fourteen and fifteen. Appellant Adorno requested the lower court to instruct the jury, as a question of law, that witness José Luciano Rivera was an accomplice of said defendant Adorno and that therefore, his testimony had to

---

"Rule 8. Joinder of Offenses and of Defendants.

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (William M. Whitman, Fed. Criminal Proc. (1950 ed.), 68).

The said rule permits the charging of more than one offense in an indictment or information in a separate count, where (a) the offenses are of the same or similar character, or (b) are based on the same act or transaction, or (c) are based on two or more acts or transactions connected together or constituting parts of a common plan.

In avoidance of prejudice for the State as well as for the defendant, Rule 14 of the Federal Rules of Criminal Procedure grants discretion to the court, even when the information complies with Rule 8(a), to order an election or separate trials of counts, severance of defendants or whatever other relief justice requires.

Even before the Federal Rules of Criminal Procedure went into effect, and without the statutes making mention thereof, the discretion of the courts to grant these reliefs was recognized. Whitman, Federal Criminal Procedure 114 § 14.3; II Nichols, Cyclopedia of Federal Procedure, footnote 33 at 410; Note of Advisory Committee on Rule 14, and cases therein cited, 18 U.S.C. (1952 ed.), 2533.

If this is so, all the more reason why the relief of election should be granted when the information contains only one count and it is afterwards by the statements in a bill of particulars or in the exposition of the theory of the district attorney to the jury that it is discovered that the district attorney was attempting to prove, and to that effect presents evidence, that the defendant had committed two offenses of the same or similar character or which constitute part of a common plan.

be corroborated with other independent evidence connecting Adorno with the commission of the offense charged in the information. This petition was denied and the court, on the contrary, instructed the jury as a question of law, that witness José Luciano Rivera was not an accomplice of defendant Adorno.[10]

It is a well-settled rule in this jurisdiction as well as in California, that when a witness commits the same offense charged to the defendant, such witness is an accomplice. *People* v. *Rivera,* 79 P.R.R. 783; *People* v. *Villanueva,* 71 P.R.R. 858; *People* v. *Flecha,* 70 P.R.R. 651; *People* v. *Díaz,* 67 P.R.R. 736; *People* v. *Sagehorn,* 294 P. 2d 1062.

Adorno was charged with the offense of bribery defined in § 82 of our Penal Code (see footnote 7, *supra*), because in the month of April 1952 he offered and gave money, through detective José Luciano Rivera, to corporal Casalduc, in Arecibo, so that this officer would not follow up the violations of the *Bolita* Act committed by him (Adorno) or his agents and also because in December of the same year he offered and gave money to corporal José M. Padilla, in Puerto Nuevo, with the same intent.

The evidence of The People proved that detective Luciano, in Padilla and Adorno's name, offered and gave money to corporal Casalduc, as a bribe. The theory of The People is untenable in the sense that on that occasion Luciano acted as an agent of Padilla and not of Adorno. Luciano knew that it was Adorno who was giving the bribe which he offered and gave to Casalduc. Upon offering and giving a bribe to Casalduc so that this executive officer would not follow up the violations of the *Bolita* Act committed by Adorno or his

---

[10] The judge of the lower court gave the following instruction to the jury: "In this case also, as you have heard, there has been talk and discussion about accomplices, the testimony of an accomplice was also introduced. I now instruct you that José Luciano Rivera is an accomplice of José M. Padilla, *but that he is not an accomplice of Feliciano Adorno.* He is accomplice only of José M. Padilla and Casalduc, but you do not have to deal with Casalduc anymore." (Italics ours.)

agents in Arecibo, Luciano committed the offense of brib-
ery defined in § 82 of the Penal Code; and the offense
thus committed by Luciano is the same offense for which
Adorno was prosecuted. Luciano and Adorno could have
been included in the same information for the offense of
offering and giving a bribe to corporal Casalduc. In view of
the foregoing, the undisputed conclusion is that Luciano is
an accomplice of Adorno. *People* v. *Rivera, supra; People*
v. *Villanueva, supra; People* v. *Flecha, supra* and *People* v.
*Díaz, supra.* Accordingly, the lower court should have in-
structed the jury as a question of law, that Luciano was an
accomplice of Adorno and that his testimony was subject to
the rule of corroboration. *People* v. *Flecha, supra; People*
v. *Rivera, supra.* In not doing so the lower court committed
an error prejudicial to the defendant.

 In view of that, we must determine whether detec-
tive Luciano's testimony is corroborated in the record. If
it is not, the judgment appealed from should be reversed and
the defendant acquitted. If it is, then a new trial lies.

Section 253 of the Code of Criminal Procedure (34
L.P.R.A. § 732) provides that a conviction can not be had
on the testimony of an accomplice, unless it is corroborated [11]
by other evidence, which in itself, and without the aid of
the testimony of the accomplice, tends to connect the defend-
ant with the commission of the offense; and the corrobora-
tion is not sufficient if it merely shows the commission of the
offense, or the circumstances thereof.

To determine whether the testimony of an accomplice has
been corroborated, this Court has adopted the following mode
as a proper test: "eliminate from the case the evidence of
the accomplice, and then examine the evidence of the other
witness or witnesses with the view to ascertain if there be
inculpatory evidence—evidence tending to connect the defend-
ant with the offense. If there is, the accomplice is corrobo-

---

[11] The Spanish text says *"confirmada"*.

532

rated; if there is no inculpatory evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him." *People* v. *López*, 34 P.R.R. 252; *People* v. *Figueroa*, 46 P.R.R. 130. Before applying the foregoing rule to the facts of this case, we should remember here that Luciano's testimony establishes all the elements of the offense of bribery charged against appellant Adorno and also connects him with the commission of said offense. Luciano's offer to Casalduc requesting him to come to Padilla's house every month to get the sum of $100 which Adorno sent him and the delivery by Luciano to Casalduc of the $50 that Adorno sent him, all for the purpose of keeping Casalduc from following up the violations of the *Bolita* Act committed by Adorno or his agents in the district of Arecibo, establishes, without doubt, the corpus delicti. It has been decided under statutes like ours which require corroboration of the testimony of an accomplice, that the latter's testimony alone, is sufficient to prove the commission of an offense, that is, the corpus delicti. *People* v. *Barclay*, 40 Cal. 2d 146, 252 P. 2d 321; *People* v. *Wayne*, 264 P. 2d 547; *People* v. *Briley*, 9 Cal. App. 2d 84, 48 P. 2d 734; *People* v. *Claasen*, 313 P. 2d 579; *Madden* v. *State* (Okla.), 223 Pac. 716; *State* v. *Huntington* (Ia.), 80 N.W. 2d 744.

 This Court has repeatedly held that corroborative testimony is not required for all the elements of a crime, and likewise that the corroborative testimony need not be direct or strong, provided it tends to connect the defendant with the commission of the crime. *People* v. *Portalatín*, 72 P.R.R. 145; *People* v. *Baerga*, 70 P.R.R. 85; *People* v. *Rosario*, 68 P.R.R. 526; *People* v. *Márquez*, 64 P.R.R. 354; *People* v. *López*, 42 P.R.R. 487; *People* v. *Vázquez*, 40 P.R.R. 245; *The People* v. *Maldonado*, 17 P.R.R. 22. Also see, *People* v. *Lyons*, 324 P. 2d 556; *People* v. *Roach*, 306 P. 2d 523; *People* v. *Comstock*, 305 P. 2d 228; *People* v. *Blau*, 294 P. 2d 1047, *cert. den.*, 352 U.S. 837.

In the record of this case there is sufficient evidence apart from Luciano's testimony to connect the defendant with the commission of the offense charged. That evidence proves that on the date stated in the information Casalduc was the chief of the vice squad in the Arecibo area; that Casalduc lived in the outskirts of the city of Arecibo; that on the date on which Luciano gave him the bribe money, Casalduc was confined in a hospital of that city; that defendant Adorno admitted to Víctor Barrios Cano, his former partner in the game of cards, that he (Adorno) was not being pursued because he had connections with the detectives; that he paid an average of $2,000 to the police and the detectives; that he had the detective squad under his control from Cataño to Arecibo; that he gave $500 to Padilla and had control of the chief of the vice squad of Arecibo.[12]

Víctor Barrios Cano's testimony with regard to the admissions of the defendant constituted in themselves sufficient corroboration. *People* v. *Segarra*, 70 P.R.R. 458; *People* v.

---

[12] From Víctor Barrios Cano's testimony we copy the part relevant herein:

"Q. I am asking you whether you talked to this defendant, Feliciano Adorno, alias Chiquitín, in 1952?

"A. Yes, sir.

"Q. When?

"A. Between October and December 1952.

"Q. What did you talk to him about?

"A. On different occasions when we talked he referred to the *bolita* businesses and his connections with the detectives and why he was not being pursued.

"Q. Please say what Feliciano Adorno specifically told you.

"A. Once. . . .

" . . . . . . . .

"Q. Please say what this defendant, Feliciano Adorno, alias Chiquitín, told you specifically.

"A. Once he saw me here around San Juan at about 4 p. m. and stopped his automobile and told me that he was looking for me. Then he invited me to get in his automobile. I accompanied him. Upon approaching the bridge he said to me: 'Look, Vitín, I want you to find out for me about "El Rubio." ' I said, 'El Rubio'? 'Yes, one who is engaged in *bolita* from Cataño to Bayamón, because that man is causing me damage. I will have him eliminated in 24 hours because for that I pay an average of $2,000 to the police and the detec-

*Baerga, supra; People* v. *Rosario, supra; People* v. *Márquez, supra; People* v. *Bonilla,* 124 C.A. 2d 199, 12 P. 2d 64; *People* v. *Rissman,* 316 P. 2d 60; I Underhill, Criminal Evidence (5th ed.), 386, § 183.

Since there is sufficient evidence to be submitted to and considered by the jury, a new trial will be held.

██ The fourth error assigned is the admission in evidence, over appellant's objection, of the statements made by Casalduc to Luciano when the latter offered him the bribe. Those statements were to the effect that he (Casalduc) "had to think it over because the District Attorney had interest in pursuing Chiquitín." The court admitted that evidence on the ground that such were statements of a codefendant and not on the ground that they were statements of a coconspirator. The evidence was relevant insofar as Casalduc was concerned because it proved the latter's first reaction at

---

tives. I have the detectives controlled from Cataño to Arecibo because my business is a big one and I eliminate anyone who interrupts me in it.'

"Q. Did he tell you specifically whom he had under his control?
"A. Yes, sir.
 "Mr. Andréu: Leading.
 "The Court: It is leading.
"Q. I ask you if he mentioned names.
"A. Yes, sir.
 "Mr. Andréu: Objection.
 "The Court: The question is allowed.
"Q. Whom did he tell you?
"A. Padilla.
"Q. Which Padilla?
"A. That one over there.
"Q. What did he say about Padilla?
"A. That he gave Padilla $500 a month.
"Q. And what else did he say?
"A. And he told me that he had the detective chief of the vice squad of Arecibo controlled.
"Q. Controlled for what?
"A. So that he would not pursue him in his *bolita* business.
"Q. Are you referring to conversations which took place between October and December 1952?
"A. Yes, sir."
(Third piece at 417–19.)

the bribe offer, which was not to reject the bribe but to think whether he should accept it or not. Other evidence proved that Casalduc, after thinking it over as he had agreed with Luciano, decided to accept the bribe. Of course, the court should have instructed the jury that said evidence was evidence against Casalduc and not against Adorno.

▇▇▇▇▇ The eighth and ninth errors were not committed. José Luciano witness for the prosecution testified that upon being caught by four police officers on the night of January 13, 1953 in front of Brumbaugh School while he was taking $125 which Cáceres sent to codefendant Padilla as a bribe, he was arrested, taken to General Headquarters and disarmed. After being cross-examined by the appellant's attorney, he testified that on the following day he was taken to Colonel Roig and talked alone with this officer and that after that interview he testified what he knew about the offense charged against the defendants. When the defense asked him "Could you tell us what you and Colonel Roig talked about over there on that day, the following day?", the court sustained an objection of the district attorney and the defense took an exception.

We are not questioning the quasi-universal rule that the promise of immunity or leniency made by the State to a witness so that he will testify at a trial against his accomplices does not disqualify him as a witness or affect his competence, but does offset the credibility of the witness and the weight to be given to the testimony by the jury. For that reason, evidence that the witness testifies under promise of immunity or leniency is pertinent for the purposes already indicated and the jury should consider it. *People* v. *Gordon,* 163 P. 2d 110; *State* v. *Woods,* 142 S.W. 2d 87; *State* v. *White,* 126 S.W. 2d 234; *Vires* v. *Commonwealth,* 230 S.W. 2d 455. However, the trial judge did not err in sustaining the district attorney's objection to a question of the defense asking witness Luciano to narrate his conversation with

Colonel Roig. Immediately after that incident the defense asked Luciano whether he had been offered not to be prosecuted, to which the witness answered negatively. Previously and to attorney Andréu Ribas' questions, the witness Luciano had answered that no one had promised him that he would not be prosecuted and specifically that District Attorney Viera had not promised not to prosecute him if he served as witness. That was the pertinent evidence that the jury had to consider, but since the witness denied that he had been promised anything, it was incumbent on the defense to prove, if it had evidence therefor, that the witness was lying on that point and that such promise had actually been made to him. Far from following that course the defense limited itself to proving with witness Luciano himself, that despite the latter having admitted that he knew he was committing an offense of bribery when he made the offer and delivery of money to Casalduc, he had not been prosecuted nor had any administrative charges been filed against him nor had he been separated from service. From these facts the jury could reasonably infer that said witness had been offered immunity and could consider that fact upon weighing his testimony to give him the credibility that he deserved in case the jury would not believe Luciano's explanation that he testified on the following day and not on the night when he was caught receiving the bribe because that night he was very nervous.

The appellant also complains that his right to cross-examine witness Luciano was curtailed in not permitting the latter to say what he had talked about in his conference with Captain Camacho the day after being caught accepting Cáceres' bribe. Appellant's complaint is unfounded for the reasons already set forth upon considering the incident connected with the conversation between the witness and Colonel Roig and also because the appellant did not ask the witness what the latter had talked about with Captain Camacho. It

was to a specific question of attorney Andréu Ribas on what Camacho and the witness discussed, that the latter answered: "I told him . . . he tried to question me, I told him that I would tell him the next day. I told him that I was coming the next day, that I was not going to testify anything."

■ The tenth assignment maintains that the lower court erred in permitting witness Víctor Barrios Cano to testify that on or about 1938 or 39 he played dice, poker, and monte with defendant Adorno. The appellant argues that said evidence was impertinent, irrelevant, and remote; that said evidence was introduced pursuant to the district attorney's general plan to try to obtain a conviction against Adorno on the ground that the latter was a gambler by profession, who had outlawed himself.

We disagree. After witness Barrios Cano testified that Adorno once asked him to investigate who "El Rubio" was, a person who was harming him in his business because he operated a *bolita* game in Cataño and Bayamón, and whom Adorno wanted to eliminate as a *bolitero* and likewise after Barrios Cano testified on the admissions that Adorno made to him on the bribe to the police, the district attorney asked him "Did you ever have any dealings with Feliciano Adorno, alias Chiquitín, on any previous occasion?" In answer to this and other questions the witness related his dealings with Adorno on or about 1938 or 1939. That evidence tended to prove that witness Barrios Cano and defendant Adorno had been friends and partners in the illegal game of cards and dice some fifteen years back. Those facts can constitute the explanation of why Adorno specifically entrusted to Barrios Cano and not to any other person the job of investigating who "El Rubio" was and also why he made the highly incriminating admissions on the bribe to the police. The relevancy then, of the connections between said witness and the defendant is obvious. It was a factor which helped the

jury to determine the credibility deserved by the witness. The error was not committed.

■ The twelfth error is prompted by the admission of Perfecto Segarra's testimony to the effect that in 1946 he worked for two months with defendant Adorno in a *bolita* game.

The error was committed. The evidence is remote. If the mere lapse of time alone is not a determining factor of the inadmissibility of the evidence, the latter should be relevant and pertinent to the offense prosecuted. The evidence that the defendant operated a *bolita* game in 1946 is not relevant if there are no other circumstances or factors connecting or relating that fact to the offense of bribery allegedly committed by said defendant in 1952.[13] See 22 C.J.S. 977, § 638.

■ The sixteenth assignment charges the trial court with error "in denying defendant Feliciano Adorno's motion to set aside the verdict of guilty rendered against Feliciano Adorno, on the ground that said verdict was absolutely inconsistent with the verdict of acquittal rendered by the same jury and on the same evidence in favor of defendant José M. Padilla."

This assignment relies on erroneous facts. In the first place, the offense charged against the defendant-appellant is different from the offense charged against Padilla. Though it was alleged in the information that both defendants acted in common agreement, they were prosecuted for the substantive offense of bribery and not for that of conspiracy. In the second place, the evidence introduced against Adorno was not the same introduced against codefendant Padilla. It suffices to remember that the admissions made by Adorno to witness Barrios Cano constituted highly

---

[13] Although we are inclined to believe that this error alone would not give rise to a reversal of the judgment, it is unnecessary to decide it in view of the fact that for other reasons we are ordering a new trial.

incriminating evidence against Adorno and not against Padilla, since said evidence was not admissible against the latter especially in view of the absence of evidence of a conspiracy between Adorno and Padilla, although, of course, there is no doubt that part of the other evidence introduced involved both of them in the commission of offenses.

Section 92 of the Code of Criminal Procedure—34 L.P.R.A. § 147—substantially equivalent to § 920 of the Code of California, provides: "Upon an information against several defendants any one or more may be convicted or acquitted."

Where there is a slight difference in the evidence as to two persons jointly tried, the trier of facts may weigh the evidence and make an allowance for such difference and when that is done, and one is acquitted and the other convicted, the fact that the evidence involves the acquitted person to some extent will not require the exoneration of the other. This is the doctrine followed in California and other jurisdictions. *People* v. *Schwarz*, 248 Pac. 990; *People* v. *Taylor*, 199 P. 2d 751; *People* v. *Wilson*, 129 P. 2d 54; *People* v. *Shaw*, 252 P. 2d 670; *People* v. *Edwards*, 185 P. 2d 74; *People* v. *Hamilton*, 274 P. 2d 175; *Bucklin* v. *United States*, 40 L. Ed. 305; *United States* v. *Hare*, 153 F. 2d 816; *Bartlett* v. *United States*, 166 F. 2d 920; *Cf. Davis* v. *State*, 23 So. 770; *People* v. *Talbot*, 22 P. 2d 587; 28 P. 2d 1057; *State* v. *Ward*, 228 Pac. 180; V Wharton's Criminal Law & Procedure (1957 ed.), 320, § 2128.

In the case of *Edwards, supra*, husband and wife were charged with burglary. The information contained five counts. A policeman testified that the husband had confessed with respect to one of the counts. It was decided that the verdicts acquitting the wife and convicting the husband were not inconsistent. The test that has been followed in some of the above-cited decisions is whether there really is evidence to uphold the judgment of conviction. In this case we have already said that the district attorney introduced

evidence which, if believed by the trier of facts, is sufficient to convict the defendant.

In deciding that this error was not committed we are limiting ourselves to the facts of the case and, therefore, not expressing an opinion as to other situations, like for example, when the evidence introduced against two codefendants is identical, and although sufficient to convict both, the jury exonerates one and convicts the other.

Since we are ordering a new trial for obvious reasons, it is unnecessary to discuss the first, fifth, sixth, and seventh errors.

In view of the foregoing, the judgment rendered against the defendant-appellant will be reversed and a new trial ordered.

Mr. Chief Justice Negrón Fernández did not participate herein.